SYRANG AERO CLUB, INC., PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 13244–78X.    Filed January 17, 1980.

*John M. Lischak,* for the petitioner.
*Richard S. Kestenbaum* and *Bernard B. Kornmehl,* for the
respondent.

## OPINION

TIETJENS, *Judge:* Respondent determined that petitioner does
not qualify for exemption from Federal income tax under
section 501(c)(3).[1] Petitioner, challenging respondent's adverse
determination, has invoked the jurisdiction of this Court for a
declaratory judgment pursuant to section 7428.

The issue for our determination is whether petitioner is
organized and operated exclusively for one or more exempt
purposes within the meaning of section 501(c)(3).

This case was submitted for decision on a stipulated adminis-
trative record under Rules 122 and 217, Tax Court Rules of
Practice and Procedure. The stipulated record, which is assumed
to be true for the purpose of this proceeding, is incorporated
herein by reference.

Petitioner is a not-for-profit corporation incorporated pursu-
ant to the laws of the State of New York on August 4, 1971. Its
principal place of business is Syracuse, N.Y. Petitioner filed
Form 1023, Application for Recognition of Exemption, on
September 30, 1974, which was received by the District Director
on October 21, 1974.[2] On August 31, 1978, respondent issued a
final ruling denying petitioner's application.

---

[1]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as
amended.

[2]An organization seeking exemption under sec. 501(c)(3) must file its Form 1023 within 15 months
from the end of the month in which it was organized, unless the organization falls within an exception

According to its pre-amended articles of incorporation, petitioner's purposes included:

A. To promote interest in flying and enable and encourage members to improve and enjoy their flying skills and abilities.

B. To provide members of the Syracuse Air National Guard of military and civilian status, as well as any other personnel who from time to time may qualify for membership, as well as any other qualified personnel under the By-Laws and regulations, through its operation and maintenance of its aircraft, the safest and most economical flying opportunity possible.

C. To promote interest and participation in the New York Air National Guard by providing all members the opportunity to participate in recreational flying.

D. To provide support, such as the club is able, for activities of the New York Air National Guard as from time to time may be requested by the Commander or his representatives.

E. To provide assistance to the community at large in time of disaster or other public need for aerial operations.

F. To conduct a program or programs of flight safety and instruction for all members under proper regulation of the New York State Department of Education, the United States Federal Aviation Agency, and any other regulatory agencies applicable thereto, including the United States Veterans Administration when and if qualified.

The articles included no provision for the dedication of assets upon the organization's dissolution. Petitioner, however, received approval of the New York State Education Department as a type B corporation. N.Y. Not-For-Profit Corp. Law sec. 201(b) (McKinney 1970).

According to its certificate of amendment, accepted by the State of New York on November 15, 1973, petitioner's original and continuing purpose is: "To conduct a program or programs of flight safety and instruction for all members under proper regulation of the New York State Department of Education, the United States Federal Aviation Agency and any other regulations thereto, including the United States Veterans Administration when and if qualified." The certificate of amendment stated that the purpose of the corporation shall be solely educational and that the stated purposes (A) through (E) of the original certificate were hereby eliminated.

---

enumerated in sec. 508(c). Petitioner comes within the exception set forth in sec. 508(c)(1)(B) and sec. 1.508–1(a)(3)(i)(b), Income Tax Regs., for an organization, not a private foundation, which normally has yearly gross receipts of not more than $5,000.

The amended certificate provides also that upon petitioner's dissolution, the assets of the corporation, less any obligations, liens or encumbrances, would be distributed to the United States Government, Federal Aviation Agency (FAA), or the Civil Air Patrol, whichever the Director of the FAA determined, at the time of the dissolution, to be most appropriate to further the intention of aviation education in the public interest and that, at its dissolution, in no instance shall petitioner's assets be distributed to its members.

Petitioner's bylaws describe the purposes of the corporation in language essentially the same as purposes (A) through (E) of the original articles of incorporation. There is no reference in the bylaws to "conduct[ing] a program or programs of flight safety and instruction."

Petitioner owns one airplane which it rents to club members at a low cost. Petitioner does not maintain a professional staff of flying instructors, and neither requires nor provides classes in, or supervision of, flying.

Petitioner restricts its membership to all members of the Syracuse Air National Guard and civilian employees, active and retired members of all reserve military units, FAA personnel, and dependents of all of the above and their civilian employees. Because of its limited facilities, membership is further restricted to 30 from the above groups.

Petitioner contends that it is organized and operated exclusively for the educational advancement of aviation, that it allows for no private inurement of individual members, directors, or officers, and that, by serving the U.S. Air Force Reserve Mission of the 174th New York Air National Guard (Mission) and personnel, it exists for the interests of the public.

Respondent, by contrast, asserts that petitioner's articles of incorporation, until their amendment in 1973,[3] failed the "organizational test" of section 501(c)(3) because they (1) empowered petitioner to provide recreational flying for its members, a nonexempt purpose; (2) failed to describe in detail the manner of petitioner's operations, as required by section 1.501(c)(3)–1(b)(1)(ii), Income Tax Regs., where a document is more specific

---

[3]Respondent concedes that subsequent to their amendment in 1973, petitioner's articles of incorporation meet the "organizational test" of sec. 501(c)(3).

than merely delineating a section 501(c)(3) purpose; and (3) failed to contain the necessary dissolution clause.

Additionally, respondent argues that petitioner fails the "operational test" because it has not established it is operated exclusively for an educational or other exempt purpose within the meaning of section 501(c)(3) and because it is operated for the private interests of its members.

Respondent's final ruling letter denied petitioner exempt status on the grounds that petitioner was originally organized for the recreation of its members and petitioner still operates for the recreation of its members. Petitioner has the burden of proof to show that respondent's determination is wrong. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.

In order to be exempt under section 501(c)(3), an organization must qualify under both the organizational and the operational tests. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. The organizational test requires that an organization's articles of organization[4] restrict its purposes to one or more purposes enumerated in section 501(c)(3) and do not empower it to engage, except insubstantially, in activities in themselves not in futherance of those purposes. Sec. 1.501(c)(3)–1(b)(1)(i)(*a*) and (*b*), Income Tax Regs. The articles may state the organization's purposes in terms as broad as or more specific than those stated in section 501(c)(3). Sec. 1.501(c)(3)–1(b)(1)(ii), Income Tax Regs. In order to establish its exemption, an organization must submit a detailed description of its activities with and as part of the application for exemption. Sec. 1.501(c)(3)–1(b)(1)(v), Income Tax Regs.

The assets of an exempt organization must be dedicated to an exempt purpose. This requirement will be fulfilled if, upon dissolution, either by a provision in an organization's articles or by operation of law, the assets would be distributed for an exempt purpose. Sec. 1.501(c)(3)–1(b)(4), Income Tax Regs.

The operational test requires an organization's activities be primarily those which accomplish one òr more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. Sec.

---

[4]"Articles of organization" include "the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created." Sec. 1.501(c)(3)–1(b)(2), Income Tax Regs.

1.501(c)(3)–1(c)(1), Income Tax Regs. Included among the exempt purposes are "educational" and "charitable" purposes. Sec. 1.501(c)(3)–1(d)(1)(i)(*b*) and (*f*), Income Tax Regs. "Educational" is defined as:

(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(b) The instruction of the public on subjects useful to the individual and beneficial to the community.

Sec. 1.501(c)(3)–1(d)(3), Income Tax Regs. "Charitable" is defined as including the "lessening of the burdens of Government." Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs. An organization is not organized and operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs. See *Baltimore Health and Welfare Fund v. Commissioner*, 69 T.C. 554 (1978); *Callaway Family Association v. Commissioner*, 71 T.C. 340 (1978).

We find that petitioner fails the operational test of section 501(c)(3).[5] Petitioner only incidentally serves an "educational" or "charitable" purpose. Essentially, it operates as a club which provides low cost airplane rentals to its members. It employs no faculty, provides no classes, lectures, or instructional material. Although its 30 members are working on increasing their skills, petitioner merely provides them with an opportunity for unsupervised flight time. Its bylaws further evidence the lack of educational purpose of its operations.

It is true that flight experience in itself is necessary to advance the skill of an aviator; yet to be "educational" such time should be evaluated and criticized by a more experienced person who can direct the member's training so that the practice time will effect improvement. Otherwise, unsupervised flying time may actually result in acquiring and reinforcing bad habits. Moreover, while petitioner's members may be involved in improving their flying skills, they must independently arrange and pay for any flying lessons they choose to take. Petitioner does not aid them in their search, but merely provides them with a low cost airplane for their use.

---

[5]Because we find that petitioner does not meet the requirements of the operational test of sec. 501(c)(3), we need not consider whether petitioner's pre-amended articles of incorporation satisfy the organizational test of that section.

Section 1.501(c)(3)–1(d)(3)(ii), Income Tax Regs., provides four examples of educational organizations:

*Example (1).* An organization, such as a primary or secondary school, a college, or a professional or trade school, which has a regularly scheduled curriculum, a regular faculty, and a regularly enrolled body of students in attendance at a place where the educational activities are regularly carried on.

*Example (2).* An organization whose activities consist of presenting public discussion groups, forums, panels, lectures, or other similar programs. Such programs may be on radio or television.

*Example (3).* An organization which presents a course of instruction by means of correspondence or through the utilization of television or radio.

*Example (4).* Museums, zoos, planetariums, symphony orchestras, and other similar organizations.

Petitioner conforms to none of these illustrations. It has no faculty and gives no instruction; it presents no public discussions or similar programs; it does not provide exhibits or performances from which the public may benefit.

Although petitioner has not argued that its purpose is a "charitable" one in that it lessens the Government's burdens, if we find that it is in fact organized and operated exclusively for this purpose, it will nonetheless qualify for exemption. Sec. 1.501(c)(3)–1(d)(1)(iii), Income Tax Regs.

Petitioner has submitted a letter from an officer of the New York Air National Guard in which it is stated that petitioner operates as a recruitment and morale incentive, and provides photographic support, emergency search, and other aerial assistance for the Mission. In its original articles of incorporation as well as in its Application for Recognition of Exemption, disaster and other support for the New York Air National Guard and for the community at large are enumerated under its purposes. Although these purposes have been purportedly eliminated by its certificate of amendment in 1973, petitioner continues to argue in its brief that it provides such services.

From the administrative record, however, it is far from clear that petitioner is organized and operated exclusively for this charitable purpose either. Petitioner appears to operate for recreational purposes as well and petitioner has failed to establish that its recreational function is an insubstantial one. Even if petitioner is performing a charitable purpose, since we find that petitioner has another substantial nonexempt purpose,

we must uphold respondent's determination. *Better Business Bureau v. United States*, 326 U.S. 279 (1945).[6]

*Decision will be entered for the respondent.*

---

[6]Petitioner cites its availability to the Mission and the community at large to underline that it serves a public purpose. Respondent, by contrast, argues that petitioner's activities benefit a small select group of members and merely serve their private interests. Again, petitioner has not sustained its burden that it is operated to serve public and not private interests.