THE SCHOGER FOUNDATION, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1626–80X.     Filed February 24, 1981.

*John J. Mangan,* for the petitioner.

*Bernard B. Kornmehl* and *Henry G. Salamy,* for the respondent.

## OPINION

PARKER, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3).[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] The issue is whether petitioner is operated exclusively for religious or other exempt purposes within the meaning of section 501(c)(3).

This case was submitted for decision on the stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.

[2] The statutory prerequisites for this declaratory judgment have been satisfied: petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

Petitioner, the Schoger Foundation, is a not-for-profit corporation organized on April 24, 1978, pursuant to the laws of the State of Illinois. Petitioner's registered office at the time of filing its petition in this case was located in Wheaton, Ill. Petitioner sent its Form 1023 (Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code) to the District Director of the Internal Revenue Service in Glen Ellyn, Ill., on July 15, 1978, and the Form 1023 was received by the District Director on July 21, 1978. On November 8, 1979, respondent issued a final adverse ruling denying petitioner's application for exempt status.

According to its original articles of incorporation, petitioner's corporate purposes were stated as:

1. To engage in and promote religious, educational and charitable purposes as those terms are defined in § 501(c)(3) of the Internal Revenue Code as amended.

2. To maintain and operate a religious retreat facility for the study, contemplation and worship of God.

3. To receive contributions and make expenditure [sic] in furtherance of the operation of a religious and educational retreat facility as those terms are defined in § 501(c)(3) of the Internal Revenue Code, as amended.

4. To purchase, own, improve, operate and sell real property and personal property for the use, benefit and maintenance of a religious retreat facility.

The original articles of incorporation included no provision for the distribution of assets upon petitioner's dissolution. However, in response to requests for information by respondent, petitioner undertook to amend its articles to add a dissolution clause reading that "upon dissolution of the Corporation the assets of the Corporation shall be disbursed to other exempt organizations." Further, petitioner has agreed that, if this is all that is necessary for a favorable determination, it will amend its articles of incorporation to provide that upon dissolution or termination, its assets will be distributed to such organization or organizations that are organized and operated for religious, charitable, or educational purposes and which have been recognized as exempt under section 501(c)(3).

Petitioner is governed by a board of directors consisting of the following five members of the Schoger family: David and Carrol Fay Schoger (husband and wife), Dennis and Cynthia Ann Schoger (husband and wife), and Evelyn Schoger. David and Dennis are brothers, and Evelyn is their mother. David is the president and treasurer of the Schoger Foundation, and Evelyn

is the secretary. None of the directors receive any wages or salary for serving as directors or for any other services.

Christ Haven Lodge, located in Teller County, Colo., is the sole asset of petitioner. Christ Haven Lodge was purchased by petitioner on July 31, 1978, for $400,000 under an installment purchase contract signed on March 31, 1978, by David H. Schoger. Although the initial contract was in the name of David H. Schoger, title to the property was taken in petitioner's name alone, with none of the directors or any other individual being personally liable for the mortgage. The initial financing for the organization, including funds for the downpayment for the lodge, was furnished solely through contributions made by the above members of the Schoger family.

Christ Haven Lodge has various religious and other activities available for its guests. None of the activities, religious or otherwise, are scheduled. The facility views itself as existing primarily to provide a place for Christian families "to rest and become reacquainted." Recreational facilities are available, but Christ Haven Lodge views them "only as a secondary source for relaxation to enable one to meditate and reflect upon God."

The religious activities at Christ Haven Lodge generally revolve around individual prayer and contemplation. Although petitioner's Form 1023 indicated that petitioner intended to conduct workshops devoted to the understanding and worshiping of God, the record does not indicate that any such workshops have been held. Daily devotions and scripture readings are conducted by the staff after breakfast, and guests are invited, but not required, to participate. A Baptist minister serves on the staff, but his role in the operation of Christ Haven Lodge is not clear. The staff minister has conducted one wedding ceremony at the lodge. Occasionally, pastors from local congregations come in to lead services and discussion groups. Sunday morning worship services are occasionally held for guests who request them. Members of the staff conduct Bible study and discussion seminars, as well as Christian song sessions and "share sessions" (discussing one's experiences with the Lord) with guests, but there is no set program for any of these activities.

The recreational and social activities at the lodge are varied. The indoor activities include a heated pool, a sauna, ping pong, a putting green, a pool table, a book and tape library, some fireplaces, and several lobby areas. The outdoor activities

include volleyball, horseshoes, ice skating, fishing, hiking, or "just sitting on a rock and taking in a view." Occasionally, Christian personalities appear to speak or perform for the guests, and singing groups occasionally perform. As with the religious activities, the recreational and social aspects of Christ Haven Lodge are left to the individual desires of the guests. There is no set program or schedule of activities, religious or otherwise.

Christ Haven Lodge permanently employs three families and two single individuals who perform the necessary services around the lodge. These include the minister, housekeeper, kitchen manager and cooks, lodge registrar, and maintenance man. In addition to the permanent help, some young people from church youth groups may volunteer to spend their summers there. All employees are provided room and board, but only the permanent employees receive a salary. Prior to receiving specified salaries, and in lieu thereof, the staff members received funds for transportation expense and certain other personal needs. On March 1, 1979, each permanent employee became salaried, and the funds for personal needs were terminated. The only members of the board of directors who work at the lodge are David Schoger, who serves as the onsite director, and his wife. They are not salaried, but they are provided with room and board while they are at the lodge. No other relatives are working or planning to work at Christ Haven Lodge, at least with expectation of compensation.

Christ Haven Lodge consists of 25 separate units, two of which are occupied by employees, leaving 92 percent available for public occupancy. In general, 60–70 percent of the total units are occupied by the public; however, during the summer and holidays, the occupancy rate rises to 95 percent. The lodge is open and operating 24 hours a day. Guests may come for one meal, for one night's lodging or for however long they wish. Guests are served three meals a day family style at a buffet. Reservations are required in advance for all bookings, regardless of the length of one's stay. Because of its reputation, Christ Haven Lodge does little solicitation and most contacts are made through references of prior guests. However, a brochure is made available to interested parties. This brochure shows pictures of the lodge, its surroundings, and some of the available activities. Although some references are made to religion and religious

principles, the brochure stresses the available accommodations and recreational activities.

Up to this time, no rate or fee has been charged to guests for use of the lodge facilities or for meals. Instead of this, donations are solicited by means of a card placed in each unit. These cards have the following message upon them:

We praise the Lord that you can share with us and we with you. We encourage your prayerful support of what God is doing in this ministry to families, especially to friends like you. For your information, the expenses of a day's lodging with meals amounts to about twenty ($20) dollars per person, and your gift toward this expense is the way this ministry can continue.

This amount is evidently geared towards petitioner's receiving enough contributions to cover expenses. This is borne out by petitioner's statement that the figure will fluctuate as the months and years pass. The record does not indicate the total amount received by Christ Haven Lodge from its guests, or the average contribution made by each guest.

Periodically, Christ Haven Lodge is made available to various groups for meetings, luncheons, banquets, and seminars. Some of these groups include young adults, senior citizens, and book review clubs. No fee has been charged for such use, but all of these costs have been met on a donation basis by the participating groups.

On its Form 1023, petitioner indicated that its estimated annual operating expenses would run between $261,000 and $320,000 per year. The Form 1023 indicated that petitioner's financial support would be private contributions in general and contributions for the use of the lodge facilities. Since the beginning of operations, expenses have run close to the expected minimum estimate.

Respondent's final adverse determination letter provided in part, as follows:

You do not meet the organizational test under section 501(c)(3) since you do not provide for the proper distribution of your assets upon dissolution or termination. Furthermore, you are not operated exclusively for any of the purposes specified within the meaning of section 501(c)(3) since you are operated primarily to provide members of the public with social and recreational activities in a commercial manner.

Section 501(c)(3) provides that in order for an organization to

obtain an exemption from Federal income tax, it must be organized and operated exclusively for an exempt purpose.[3] The term "exclusively" has not been construed to mean "solely" or "absolutely without exception." *Church in Boston v. Commissioner*, 71 T.C. 102, 107 (1978). An organization that engages in nonexempt activities can obtain and maintain exempt status so long as such nonexempt activities are only incidental and less than substantial. *St. Louis Union Trust Co. v. United States*, 374 F.2d 427 (8th Cir. 1967); *Steven Bros. Foundation, Inc. v. Commissioner*, 39 T.C. 93 (1962), affd. in part and revd. in part 324 F.2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964).

On brief, respondent abjured reliance upon the organizational test.[4] We, therefore, need focus only on the operational test. Section 1.501(c)(3)–1(c)(1), Income Tax Regs., provides as follows:

(c) *Operational test.* (1) *Primary activities.* An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

Thus, to qualify for exemption, petitioner must show that it was at all times relevant hereto operated exclusively for religious

---

[3]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

    \*        \*        \*        \*        \*        \*        \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

    \*        \*        \*        \*        \*        \*        \*

(3) Corporations * * * organized and operated exclusively for religious, charitable, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

[4]In his final determination letter, respondent indicated that one of the reasons for denying an exemption was that petitioner did not provide for proper distribution of its assets upon dissolution, a requirement under sec. 1.501(c)(3)–1(b)(4), Income Tax Regs. The administrative record shows that petitioner was ready and willing to amend its bylaws should that be required as a condition of receiving a favorable ruling. As we have stated, respondent has abandoned this issue on brief, and properly so.

purposes, i.e., that it engaged "primarily" in activities which accomplished that exempt purpose. Petitioner will not qualify for exemption if a nonexempt activity is more than an insubstantial part of its activities, or if an activity of petitioner has more than an insubstantial nonexempt purpose. *First Libertarian Church v. Commissioner*, 74 T.C. 396, 403 (1980); *San Francisco Infant School v. Commissioner*, 69 T.C. 957, 964 (1978); *Better Business Bureau v. United States*, 326 U.S. 279, 283 (1945). The regulations and cases clearly contemplate that a single activity may be carried on for more than one purpose. If a substantial secondary purpose is not an exempt one, qualification under section 501(c)(3) will be denied. This is a question of fact. See, e.g., *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 357 (1978).

The burden of proof is upon petitioner to show that respondent's determination is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. Petitioner has attempted to shift this burden under Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure, by asserting that respondent has raised a new matter on brief that had not been given as a ground in his final adverse determination letter. Respondent's final adverse determination letter stated that an adverse ruling was issued because petitioner "operated primarily to provide members of the public with social and recreational activities in a commercial manner." In his opening brief, respondent stated the issue as whether petitioner is "operated for substantial nonexempt social and recreational purposes." These two statements are saying essentially the same thing.[5] Respondent has not raised any new issue or new matter, and the burden of proof remains with petitioner. *Hancock Academy of Savannah, Inc. v. Commissioner, supra.*

Respondent asserts that petitioner's substantial, if not sole, purpose is to provide a facility where guests can relax, socialize, and engage in recreational activities, or, in other words, to operate a vacation resort. Respondent argues that therefore

---

[5]In its simultaneous opening brief, petitioner itself treated the matter as part and parcel of the same argument. Petitioner discussed the presence of the recreational facilities at the lodge, arguing that their presence did not indicate that petitioner was not operating primarily in furtherance of religion and that the presence of a nonexempt purpose "insubstantial in nature" would not defeat exemption. (Petitioner's Opening Brief at 7–8.)

petitioner is not operated "exclusively" for an exempt religious purpose within the meaning of section 501(c)(3). *First Libertarian Church v. Commissioner, supra; Syrang Aero Club, Inc. v. Commissioner,* 73 T.C. 717 (1980). The indoor and outdoor recreational activities at Christ Haven Lodge are comparable to a resort's activities, and although recreational activities are unscheduled, they are freely available for a guest's use, whenever desired. In arguing that petitioner operates the lodge in a commercial manner similar to a vacation resort, respondent points to the required advance bookings, full meal service, 24-hour operation, suggested "donations" or fees, and fully optional activities, all of which are characteristic of a hotel or resort.[6] Respondent asserts that the emphasis on and availability of these recreational activities show that petitioner's purpose is to provide rest, relaxation, and fellowship over the advancement of religion. Because of this nonexempt purpose, which respondent asserts to be more than insubstantial, respondent says that an exemption must be denied. *Better Business Bureau v. United States, supra.*

Petitioner, however, argues that its primary purpose is to provide a religious retreat facility for Christian families where they may come to reflect upon and worship the Lord in a setting free from the outside interferences of everyday life. Petitioner states that it wishes to give its guests the choice to reflect and worship either as a family unit, individually, or as part of the Christ Haven community. Petitioner states that although guests are encouraged to participate in the daily religious activities conducted by the staff, requiring attendance would be contrary to the promotion of the freedom of choice to worship within or as a family. Although religious services and other religiously oriented activities are held on occasion at Christ Haven Lodge, attendance is not required at any time, and a guest need not participate in any type of religious activity during his stay at

---

[6]Petitioner apparently interprets the phrase "in a commercial manner" as meaning operating for commercial purposes or strictly for profit. Petitioner argues that it operated at a deficit and that failure to operate at a profit is a factor to be considered in determining whether or not an organization seeking exempt status is primarily operated for commercial purposes. *Elisian Guild, Inc. v. United States,* 412 F.2d 121 (1st Cir. 1969). That is only one factor, however, and failure to show a profit does not *per se* entitle an organization to exempt status. 412 F.2d at 125. Even if petitioner were operating at a deficit during this early period of its existence, which is not clear on this record, that fact would not counterbalance the other facts in this case.

Christ Haven, individually or otherwise. The record is singularly devoid of any information as to the extent to which guests participate in any religious activities.

Petitioner admits the lack of organized religious activities and the availability of the recreational activities, but argues that the advancement of religion can be accomplished in a family, individual, or group setting away from outside distractions. The Court agrees with petitioner that specific mandatory religious activities are not necessarily required, but there must be something more than the fact that Christ Haven Lodge is promoted as a lodge "for Christian families." Wholesome family recreation or just sitting on a rock contemplating nature may well provide a family or an individual with a religious, or at least a spiritually uplifting experience, but it is difficult to see how that experience differs, if it does, from the same experience one can have at any quiet inn or lodge located in the beautiful mountains of Colorado.

While petitioner argues vigorously that there is no basis in the administrative record for saying that the guests of Christ Haven Lodge spend the majority of their time engaged in recreation, relaxation, and socializing, the fact is that there is simply no basis for saying that they do not.[7] Petitioner again argues that nowhere in the administrative record is it shown that the recreational facilities were used extensively or in more than an insubstantial manner; unfortunately for petitioner, nowhere in the administrative record is it shown that the recreational facilities were not used extensively and were not used in more than an insubstantial manner. Petitioner has the burden of proof and has simply not sustained its burden.

Here, petitioner is engaged in the operation of a mountain lodge. Petitioner characterizes the lodge as a "religious retreat

---

[7] If anything, there may well be a basis for saying that they do. At the administrative level, petitioner was specifically requested to furnish a schedule showing the amount of time each day, by the hour, spent on religious activities by the guests and the amount of time spent on other activities. Petitioner responded as follows:

"Since the primary purpose of the lodge is to provide a facility for Christian families to rest and become reacquainted, there is no set program or schedule of activities, religious or otherwise. We do invite both staff and guests to participate in daily devotions and Scripture reading after each breakfast. We have, on occasion, held a Sunday morning worship for guests requesting this service. The staff minister has also conducted a wedding ceremony attended by guests at the lodge at the time. *The remainder of the hours each day is left to the families for recreation and rest.* [Emphasis added.]"

facility," but merely labeling it as such is not determinative. As the opinion in the *B.S.W. Group, Inc.* case teaches us, an activity may be carried on for more than one purpose. 70 T.C. at 357. In a proper factual case, the operation of a lodge as a religious retreat facility would no doubt constitute an exempt religious purpose under section 501(c)(3), and the presence of some incidental recreational or social activities might even be found to be activities to further or accomplish that exempt purpose. But on the facts of this case, petitioner has not satisfied the Court that the lodge was operated primarily for an exempt religious purpose and that the recreational and social activities at the lodge were only incidental to that religious purpose and less than substantial.

Based upon the administrative record, the Court cannot say respondent's denial of exempt organization status to petitioner under section 501(c)(3) was erroneous.

*Decision will be entered for the respondent.*