NEW LIFE TABERNACLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
New Life Tabernacle v. Commissioner
Docket No. 10353-77X
United States Tax Court
T.C. Memo 1982-367; 1982 Tax Ct. Memo LEXIS 379; 44 T.C.M. (CCH) 309; T.C.M. (RIA) 82367; June 29, 1982
*379 Petitioner is a religious organization, which conducts weekly worship services and intercessory prayer services, and Bible study. Petitioner also has its own school with three teachers. About half of petitioner's active adult members are employed in secular jobs and give their income therefrom to petitioner. Members also give amounts received as social security benefits to petitioner. Petitioner provides members with housing, utilities, food, clothing, automobiles, and allowances. Held: in this action for declaratory judgment under section 7428(a), I.R.C. 1954, the administrative record fails to establish that no part of petitioner's net earnings inures to the benefit of private individuals. Accordingly, respondent's determination that petitioner is not an organization described in section 501(c)(3), I.R.C. 1954, is sustained. Joseph A. Dorion (an officer), for the petitioner. Ray K. Kamikawa, for the respondent. CHABOT
MEMORANDUM OPINION
CHABOT, Judge: Petitioner instituted this action pursuant to section 7428[1] for a declaratory judgment that it qualifies as an organization described in section 501(c)(3) which is exempt from tax under section 501(a). The issues for decision *380 are whether any part of petitioner's net earnings inures to the benefit of any private individual and whether petitioner was operated exclusively for the exempt purposes enumerated in section 501(c)(3). [2]
This case was submitted for decision on the basis of the administrative record as filed by, and appropriately certified on behalf of, respondent under Rule 217(b)(1). [3] The administrative record as so filed and certified is incorporated herein by this reference; statements as to facts as represented therein are assumed to be true for purposes of this opinion. [4] The jurisdictional requirements for initiating this action have been satisfied. [5] *381 When the petition in this case was filed, petitioner, which had been incorporated on March 2, 1976, [6] *382 under the General Nonprofit Corporation Law of California, had its principal place of business in Ontario, California. Petitioner's articles of incorporation set forth several purposes for which it was formed, including the following: II (A) The specific and primary purposes are: (1) To proclaim the good news of salvation by faith in our Lord Jesus Christ by any suitable method or media which includes but is not limited to the following: (a) Establishing and operating a local church for the worship of Jesus Christ, using personal evangelism television and radio for crusades, *383 conventions, preaching, teaching, missions and other Christian purposes; (b) Assisting and furthering the task of providing Biblical Scripture to groups of the world through the Holy Scriptures and other printed material by providing speakers and other instructional and educational programs which may be deemed necessary or convenient in effecting the above purposes; (c) Establishing of new programs of outreach and ministry, and the strengthening of existing programs and organizations which have a similar purpose and dedication to presenting Christ as Savior. (2) To be obedient to our Lord Jesus Christ's command to "Go ye therefore, and teach all nations, baptizing them in the Name of the Father, and of the Son, and of the Holy Spirit." (3) To serve as an instrument through which men may be witnesses unto our Lord Jesus Christ in Jerusalem and unto all Judea, and in Samaria, and unto the uttermost parts of the earth; and (4) To do only that which glorifies the Father, the Son, and the Holy Spirit. * * * No part of the net earnings of this corporation shall ever inure to or for the benefit of or be distributable to its members, trustees, officers, or other private persons, except that *384 the corporation shall be empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the exempt purposes for which it was formed. Petitioner's worship services are regularly scheduled for Saturday evenings, services primarily of intercessory prayer are held on Sundays, and Bible study is conducted four nights a week. Petitioner conducts counseling, baptisms, and weddings. Petitioner also has its own school with three teachers and 24 students enrolled in classes, which begin at 9:00 a.m. and end at 2:30 p.m. Classes are in subjects such as mathematics, science, social studies, English, other languages, reading, and penmanship. Membership in petitioner is open to any member of the public regardless of financial status. However, petitioner's by-laws provide (sec. 11) for: (1) "regular memberships", which are limited to 12 members who are chosen by the board of directors and may vote at meetings (see sec. 13.A.), and (2) "associate, honorary, sustaining or other memberships" as provided by the board of directors, which memberships do not entitle the members to vote at meetings (see sec. 16). The members of the board of directors *385 are to be elected "by the regular members of this corporation" (sec. 2; see sec. 13.A.). In June 1976, petitioner had 105 members, of whom 54 were adults and 51 were teenagers or younger. In January 1977, petitioner had approximately 200 members, with a "core group" of 20 primary staff members (including pastors, elders, deacons, teachers and teachers' assistants), 20 "Working members" (secondary staff), and 2 driver-members. The membership then included 52 who were minor children of these 44 core group members. The adult active members have various duties relating to petitioner, including responsibility for teaching and counseling. Members make oral commitments, but not contracts, to turn over their income, including benefits from Social Security, to petitioner. [7] *386 The amounts turned over constitute a common treasury in which all of petitioner's members share equally. "Working members" maintain secular jobs and turn over their after-tax "pay" therefrom to petitioner. The staff, working members, drivers, and their minor children are provided with physical and material needs, including housing, food, clothing, and transportation. The amounts turned over to petitioner by its members constitute its only source of receipts; no donations are solicited from the public. In its Application for Recognition of Exemption, petitioner inserted a projected budget [8] showing receipts totaling $ 181,290, to come entirely from its members, and expenditures totaling $ 169,576.51, all for food, clothing, shelter, transportation, and other personal expenses. As of June 9, 1976, petitioner did not own facilities for its activities but was "negotiating for a church and school, as well as homes in Pomona, California." *387 Up to at least that date, petitioner rented apartments in which to conduct its activities, as well as to use as living quarters. Respondent determined that petitioner is not exempt as an organization described in section 501(c)(3) because -- (1) petitioner's activities of providing its members with food, clothing, shelter, automobiles, and personal allowances on a per diem basis constitute inurement to the benefit of private individuals; and (2) petitioner is not operating exclusively for one or more of the exempt purposes specified in section 501(c) (3). Respondent also determined that contributions to petitioner are not deductible under section 170. Subsections (a) and (c)(3) of section 501[9] *388 provide that an organization may be exempt from income tax [10] if (1) it is organized and operated exclusively for certain specified exempt purposes, (2) no part of its net earnings inures to the benefit of any private shareholder or individual, (3) no substantial part of its activities consists of lobbying activity, and (4) it does not participate in any political campaign on behalf of any candidate for public office. Respondent contends that petitioner's financial structure (including expenditures for its members' housing, utilities, food, clothing, automobiles, etc.) results in inurement of part of its net earnings to the benefit of private individuals (its members) and that petitioner is not operated exclusively for exempt purposes. Petitioner contends that: (1) it operates for three exempt purposes (charitable, religious, *389 and educational), the accomplishment of which economically necessitates its financial structure, and (2) the expenditures for its members are in lieu of salary for their services for petitioner. We agree with respondent's determination. [11]
Although the "private inurement" test and the "operated exclusively for exempt purposes" *390 test often substantially overlap (see, e.g., Church of the Transfiguring Spirit v. Commissioner, 76 T.C. 1, 5 (1981)), they are separate requirements which the statute states in the conjunctive; failure to satisfy either of them will prevent exemption. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488, 492 (1977); Stevens Bros. Foundation, Inc. v. Commissioner, 39 T.C. 93, 109-110 (1962), affd. in part and revd. in part 324 F.2d 633 (CA8 1963). The burden of proof is on petitioner as to the grounds set forth in respondent's notice of determination. Schoger Foundation v. Commissioner, 76 T.C. 380, 386, 388 (1981); First Libertarian Church v. Commissioner, 74 T.C. 396, 402 (1980); Hancock Academy of Savannah, Inc. v. Commissioner, supra; Rule 217(c)(2)(i). Cf. Unitary Mission Church v. Commissioner, 74 T.C. 507, 512 (1980), affd. without opin. 647 F.2d 163 (CA2 1981). Petitioner's religious purposes do not excuse petitioner from the statutory obligation to satisfy the private inurement test. Unitary Mission Church v. Commissioner, 74 T.C. at 514; Levy Family Tribe Foundation v. Commissioner, 69 T.C. 615, 619 (1978). Payment of reasonable compensation to its members *391 for services performed for petitioner generally would not constitute inurement of net earnings, [12] *392 but payment of excessive compensation would. Founding Church of Scientology v. United States, 188 Ct. Cl. 490, 496, 412 F.2d 1197, 1200 (1969); Birmingham Business College, Inc. v. Commissioner, 276 F.2d 476, 480-481 (CA5 1960), affg. a Memorandum Opinion of this Court; [13]Unitary Mission Church v. Commissioner, 74 T.C. at 514; Golden Rule Church Association v. Commissioner, 41 T.C. 719, 731 (1964); Saint Germain Foundation v. Commissioner, 26 T.C. 648, 658-659 (1956). See Gemological Institute of America v. Commissioner, 17 T.C. 1604 (1952), affd. 212 F.2d 205 (CA9 1954). An organization's net earnings may inure to the benefit of private individuals in ways other than by the direct payment of excessive salaries, such as by the organization's paying for lodging for members. Founding Church of Scientology v. United States, 188 Ct. Cl. at 497, 412 F.2d at 1200 and cases there cited; Unitary Mission Church v. Commissioner, 74 T.C. at 512-513. In addressing the question of reasonableness of compensation, we consider the tests developed under section 162(a)(1). [14]Founding Church of Scientology v. United States, 188 Ct. Cl. at 496, 412 F.2d at 1200. See United States v. Dykema, 666 F.2d 1096, 1101 (CA7 1981); B.H.W. Anesthesia Foundation v. Commissioner, 72 T.C. 681, 686 (1979). Not only must the amount of the compensation be reasonable, it must have been intended to be compensation. Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 362 (CA9 1974), affg. a Memorandum Opinion of this Court; [15]Founding Church of Scientology v. United States, 188 Ct. Cl. at 500, 412 F.2d at 1202; Paula Construction Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without opin. 474 F.2d 1345 (CA5 1973). Although the administrative record *393 provides us with some information as to what personal services are performed in the aggregate, there is almost no information that would enable us to quantify the services or to determine some appropriate rate at which the services may be valued, so as to enable us to determine whether the amounts spent would be reasonable as compensation in the aggregate. We cannot determine whether the amounts spent for any individual, or for all 12 "regular members", would be reasonable. As to intent, the administrative record merely contains statements that the benefits were provided to the members on the basis of the members sharing in a common pool. Only on brief does petitioner assert that the amounts were spent as compensation. See note 6, supra. We cannot conclude, on the basis of the record in the instant case, that petitioner intended that the spending of the amounts involved constitute the furnishing of compensation. From the foregoing, we conclude that petitioner has failed to carry its burden of proving that such payments did not constitute an inurement of net earnings for the benefit of private individuals. Cf. Golden Rule Church Association v. Commissioner, supra, and Saint Germain Foundation v. Commissioner, supra, *394 in each of which we found no inurement after noting in each of these cases that respondent agreed that the maintenance expenditures there involved would have been properly deductible by the organization if the organization were not exempt from income tax. In the instant case respondent has made no such concession. Petitioner contends that its financial structure is necessary for it to carry out exempt purposes for the community at large and is a "fundamental aspect of petitioner's religious beliefs". However, the statute does not provide any exception from the private inurement test of section 501(c)(3) for any category of organization that seeks the benefits of section 501(c)(3). Respondent urges us to follow the opinion of the district court for the District of Columbia in an unreported case, Beth-El Ministries, Inc. v. United States, 79-2 USTC par. 9412, 44 AFTR 2d 79-5190 (1979). Respondent appears to urge that arrangements analogous to communal living arrangements result in "the proscribed inurement and private benefit that are inconsistent with section 501(c)(3) status." Petitioner seeks to distinguish the instant case from Beth-El, stressing that in the instant case the "board *395 and staff receive nothing from the corporations [sic] but compensation for services rendered." Our conclusion is consistent with that reached by the district court in Beth-El. We do not have to face the question of the circumstances under which a communal living arrangement may be acceptable under the "private inurement" test. We merely conclude that petitioner has failed to show on the record before us that its particular arrangement satisfies this test. Since satisfying the "private inurement" test is a statutory requirement for description under section 501(c)(3), petitioner has failed to prove that it is an organization described in section 501(c)(3). Under these circumstances, it is not necessary to determine whether petitioner has shown that respondent erred in determining that petitioner is operated for private rather than public purposes. McGahen v. Commissioner, 76 T.C. 468, 483 (1981), on appeal (CA3 Aug. 24, 1981). Nor is it necessary to determine whether petitioner is a church. Unitary Mission Church v. Commissioner, 74 T.C. at 512. We hold for respondent. [16] *396 Decision will be entered for the respondent. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the period relevant to this case. ↩
2. On brief, petitioner has abandoned the claim for attorney's fees, that had been raised in the pleadings.↩
3. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. See Assoc. for Alternative Schools v. Commissioner, 71 T.C. 118, 119↩ (1978).
5. Petitioner is the organization whose qualification is at issue (sec. 7428(b)(1)), has exhausted its administrative remedies (sec. 7428(b)(2)), and filed its petition in this case before the 91st day after respondent mailed his final adverse determination as to petitioner's qualification (sec. 7428(b)(3)↩; see also Rule 210(c)).
6. Petitioner states that the organization "had been a church [in Middleboro, Mass.] open to the public on a regular basis since 1969", that it was incorporated in Arizona in March 1975 under the name of "Good Shepherd Tabernacle", that in April 1975 it moved to Apache Junction, Arizona, that in October 1975 it moved to California, and that in October 1977 it moved to Sherman, Texas. The elements of this history of petitioner's travels, as well as numerous other statements as to matters of fact, are stated for the first time on brief; they are not reflected in the administrative record and we will not take them into account. Houston Lawyer Referral Serv. v. Commissioner, 69 T.C. 570 (1978); Evans v. Commissioner, 48 T.C. 704, 709 (1967), affd. 413 F.2d 1047 (CA9 1969); Rule 143(b). In addition, petitioner's statements as to prior history are contradicted by the following items in the administrative record: (1) petitioner's Application for Recognition of Exemption (Form 1023), in which petitioner answered "No" to the question (Part III, q. 5) "Is the organization the outgrowth of another organization, or does it have a special relationship to another organization by reason of interlocking directorates or other factors?"; and (2) petitioner's letter to the District Director for Los Angeles, California, in which petitioner answered "No" to the question "8. Has your organization operated as an unincorporated association prior to incorporation? If so, please submit financial statement for that period."
7. As of June 9, 1976, petitioner's members had not retained any of their respective incomes.
8. Petitioner's projected budget is as follows: ↩
INCOME:
Twenty-five workers at $ 120.00 per week
$ 156,000.00
Members with Social Security
25,290.00
TOTAL INCOME
$ 181,290.00
EXPENSES:
Housing - 23 units
$  39,480.00
Utilities - Gas at $ .80 per day - 23 units
6,716.00
Utilities - Electricity $ .60 per day-23 units
5,037.00
Food at $ 60.00 per week - 23 units
71,760.00
Clothing - estimated per year 12,000.00
Automobiles -Gas 10 cars at $ 40.00 per week
20,800.00
Allowances - $ 3.00 per unit per week
3,312.00
Anticipated Cost of Living Increase at 7%
10,471.51
TOTAL EXPENSES
169,576.51
EXPANSION TOTAL
$  11,713.49
9. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation. --An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503 * * * (c) List of Exempt Organizations. --The following organizations are referred to in subsection (a): 0
* * * (3) Corporations * * * organized and operated exclusively for religious, charitable, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * * ↩
10. The organization may nevertheless be subject to tax on its "unrelated business taxable income" (sec. 511 et seq.) and, if it is a private foundation, on its "net investment income" (sec. 4940). Neither of these issues appears in the instant case.↩
11. Under section 7428(a)(1)(A), a declaratory judgment action may be brought to determine whether an organization is "described in section 170(c)(2)". The petition in the instant case deals only with status under section 501, focussing on respondent's determinations as to the "private inurement" and "operated exclusively for exempt purposes" tests of section 501(c)(3). These tests are repeated in haec verba (except for a reference to "testing for public safety") in subparagraphs (C) and (B), respectively, of section 170(c)(2). See United States v. Olympic Radio and Television, 349 U.S. 232, 236 (1955); McGahen v. Commissioner, 76 T.C. 468, 482 (1981), on appeal (CA3 Aug. 24, 1981). In light of our decision that petitioner is not exempt under section 501↩ because it fails the "private inurement" test, it is unnecessary for us to consider the section 170 question.
12. The parties focus on petitioner's expenditures, and not on its "net earnings". See B. Bittker, 4 Federal Taxation of Income, Estates and Gifts, par. 100.2.4 (1981). 13. T.C. Memo. 1958-166↩.
14. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. --There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered * * * ↩
15. T.C. Memo. 1971-200↩.
16. See Houston Lawyer Referral Serv. v. Commissioner, 69 T.C. 570, 577-578 (1978), where we noted as follows: While this conclusion at first blush may seem harsh, it is not. An adverse decision in a declaratory judgment proceeding does not preclude the applicant from filing a new exemption application with which he furnishes the appropriate data for inclusion in the administrative record. Since a new administrative record would then underlie respondent's second denial of a favorable determination letter, this Court would not be precluded by principles of res judicata from entertaining a second petition to review respondent's second action. See H. Rept. 94-658, 94th Cong., 1st Sess., 1976-3 C.B. (Vol. 2) 978.↩