RETREAT IN MOTION, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Retreat in Motion, Inc. v. Commissioner
Docket No. 25167-81X.
United States Tax Court
T.C. Memo 1984-315; 1984 Tax Ct. Memo LEXIS 354; 48 T.C.M. (CCH) 334; T.C.M. (RIA) 84315; June 21, 1984. James R. Wine (an officer), for the petitioner. Reid M. Huey, for the respondent. BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This is an action for declaratory judgment under section 7428 of the Code. [1] It has been decided pursuant to the provisions of section 7456(d) and Rule 218(a). Consideration of this case was based upon the administrative record as defined in Rule 210(b)(11). The decision, therefore, is based upon the assumption that the facts as represented in the administrative record are true. Rule 217(b). The burden of proof rests upon the petitioner, both as to jurisdictional requirements which are met here, [2] as well as the grounds set forth in the notice of determination. Rule 217(c)(2). *356 Petitioner was incorporated on October 2, 1979, pursuant to the provisions of the Indiana Not-for-Profit Corporation Act of 1971. At the time of filing its petition herein its principal office was in Fort Wayne, Indiana. Petitioner's board of directors was composed of 15 persons, each of whom was a member of one of three Methodist churches in Fort Wayne. Petitioner's purpose, as stated in its by-laws, is as follows: Retreat-in-Motion is a not-for-profit corporation organized to develop opportunities to relate Jesus Christ to youth and adults through a unique traveling ministry--a "retreat in motion." A retreat in motion is a total program of which transportation is only a means of moving youth or adults to an environment (a place apart) which is more conducive to the sharing of Jesus Christ through a satisfying and fulfilling adventure. In order to achieve its purposes, petitioner acquired an "over-the-road" bus which it rebuilt inside in order to provide in-bus sleeping facilities. Title to the bus is in petitioner's name. Petitioner's program consists of taking church-related groups on three-to five-day trips and providing an environment which is more conducive to the *357 sharing of the Christian faith. These activities are conducted by the staff of petitioner, some of whom are employees and others who are volunteers. The bus trips constitute the entire program of petitioner, with the only other activities ancillary such as fund raising, administration and bus maintenance. Petitioner had two main itineraries. One was a trip from the Fort Wayne area to the Smoky Mountains, southeast beaches and Disney World in Florida; the other was to the Smokies and Washington, D.C. The groups which participated in these trips were mainly youth groups, but church choirs and clubs of all ages also had the opportunity to participate. Petitioner described a typical trip as follows: To begin to describe a trip, [3] the group would be picked up at approximately 8:00 p.m. with four staff people who will lead the group in the different activities for the next few days. The first stop in the trip is usually the Smokey [sic] Mountains. At this stop, the group will climb a mountain known as the Chimneys, prepare lunch at a campground, and sight-see in the city of Gatlinburg. Later that night, while travelling, the staff will talk with the group about the climb *358 up the mountain, using it as a metaphor of life. Time will be spent with the group in devotions and just talking. Another stop for the trip may be Washington, D.C., the capitol of our nation. The day will be spent with friends, sight-seeing in the Mall. Among the places visited would be the Washington, Jefferson, and Lincoln Monuments, the Capitol Building, the Smithsonian Institute, and the White House. The next day might be spent touring the home of President George Washington, Mount Vernon, and then viewing the changing of the guard at Arlington National Cemetary [sic]. Again devotions will be shared, possibly at Arlington National Cemetary [sic], bringing to mind all of the sites from the two days and tying them together with the Christian life. Petitioner's brochures emphasize that its purpose is to develop opportunities to relate Jesus Christ to youths and adults through a traveling ministry. The stated goal for the trips is spiritual growth and Christian fellowship. Its trips are designed for church related *359 organizations and religious groups. In response to respondent's specific question, petitioner stated that its time expended on various activities was approximately as follows: Social activities
20 percent
Recreational activities
45 percent
Sightseeing
15 percent
Shopping trips
0 percent
Religious
20 percent
Each trip is accompanied by a trained program coordinator who will lead the group in singing, faith exploration discussion and worship. The premise of petitioner's devotional program is that religious conversation and study are encouraged at any time. Additionally, there are formal devotions on a daily basis. Petitioner estimates that formal devotions are about one hour daily, religious singing two to four hours daily, faith explanations anywhere from 30 minutes to several hours daily depending upon individual needs, and worship services 35 to 50 minutes on Sunday or the last day of the trip. All of the formal worship activities are attended by all of the trip participants; the informal periods of sharing normally include everyone on the trip. Petitioner largely financed the acquisition and renovation of the bus by means of five-year bonds totaling *360 $20,000 and bank borrowings of $16,500 secured by the bus. Fees are charged to the participants in the trips in an amount sufficient to cover operating costs, the interest on the bonds and bank notes, and amortization of bond and note principal. The average cost per person for the trips has been $85. A trust fund, formed by an initial contribution of $10,000, has been set up to provide scholarships for the trips for needy youth who would otherwise be unable to participate in the experience. Respondent determined that petitioner did not qualify for exemption under section 501(c)(3); petitioner duly protested that determination and respondent issued its final adverse determination as to petitioner's exempt status as follows: The extensive amount of time, energy, and other resources which are devoted to the conduct of social and recreational activities, together with the manner in which such activities are scheduled in relation to religious programs, demonstrate that your conduct of such social and recreational activities serves substantial independent purposes of a noncharitable nature. Thereupon, petitioner timely filed its petitioner for declaratory judgment with this Court *361 pursuant to the provisions of section 7428. Section 501(a) provides that those organizations listed in subsection (c) shall be exempt from taxation; subsection (c), in relevant part, lists "Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual." Respondent's position is that petitioner fails the statutory requirement that the organization must be organized and operated exclusively for an exempt purpose. The term "exclusively" has not been construed to mean "solely" or "absolutely without exception." An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and less than substantial. National Association of American Churches v. Commissioner,82 T.C. 18, 28-29 (1984). Church in Boston v. Commissioner,71 T.C. 102, 107 (1978); *362 Butter Business Bureau of Washington, D.C., Inc. v. United States,326 U.S. 279 (1945); Income Tax Regs., sec. 1.501(c)(3)-1(c)(1). Accordingly, we limit our consideration to the basis of respondent's determination herein, viz., to the nature and extent of petitioner's nonexempt activities. As we understand petitioner, it takes the position that it has no nonexempt activities--that all of its activities are religious in nature. Petitioner on brief has attempted to argue certain matters not contained in the administrative record herein. We have not considered such matters. As we stated in Church in Boston v. Commissioner,supra at 105-106: Our function with respect to declaratory judgment proceedings is to review respondent's administrative determination. Correspondingly, respondent's determination must be based upon all the material facts contained in the administrative record. Houston Lawyer Referral Service v. Commissioner,69 T.C. 570, 573 (1978). To allow petitioner to include without *363 good cause, additional facts * * * would render the administrative procedure meaningless and expand the declaratory judgment proceeding to a trial de novo, an intent and indicated in the legislative history of section 7428. Houston Lawyer Referral Service,supra at 577. We have previously considered a case with facts somewhat similar to those at bar. In Schoger Foundation v. Commissioner,76 T.C. 380 (1981), the petitioner operated Christ Haven Lodge in Colorado. The facility viewed itself as existing primarily to provide a place for Christian families "to rest and become reacquainted." 76 T.C. at 382. It provided lodging, meals, recreational activities and various religious activities. The latter generally revolved around individual prayer and contemplation. The religious, recreational and social aspects of the lodge were left to the individual desires of the guests. There was no set program of activities. We held that petitioner had failed in its burden to show that the recreational facilities were not used extensively and were not used in more than an insubstantial manner. We went on to state at 389: In a proper factual case, the *364 operation of a lodge as a religious retreat facility would no doubt constitute an exempt religious purpose under section 501(c)(3), and the presence of some incidental recreational or social activities might even be found to be activities to further or accomplish that exempt purpose. Our consideration, then, must be whether the bus ministry here represents the "proper factual case" we referred to in Schoger,supra. In support of petitioner's position it is clear that the group on the bus trips did participate in religious activities. They were both riding and sleeping on the bus, in a contained space, and some of the religious activities took place on the bus. However, we do not believe that this is enough for petitioner to prevail. The recreational activities here, with days at Disney World, at the beach, in the Smokies and sight-seeing in Washington, D.C., appear so extensive that we cannot consider them insubstantial and incidental to the religious purpose of the trips. We arrive at this conclusion even though we consider that petitioner has shown that the religious component of the trips is substantial and that it acts as an overlay on a great portion of the recreational *365 activities. We have held that activities can be carried on for more than one purpose. B.S.W. Group, Inc. v. Commissioner,70 T.C. 352 (1978). See also Canada v. Commissioner, 82 T.C.     (June 18, 1984). Petitioner's by-laws state that "transportation is only a means of moving youth or adults to an environment (a place apart) which is more conducive to the sharing of Jesus Christ through a satisfying and fulfilling adventure." [4] This same thought is set out in petitioner's pamphlets advertising their program. Petitioner's activities had two purposes: one religious, the other recreational. Our recent decision in *366 Alive Fellowship of Harmonious Living v. Commissioner,T.C. Memo. 1984-87, does not compel a different result here. In Alive Fellowship, we noted that it was not the nature of the organization's activities, but rather the purpose towards which they are directed which determines whether the operational test is satisfied. We found that the petitioner's activities were all directed towards their purpose which respondent had conceded to be religious in nature. Alive Fellowship concerned an organization which offered courses in "polarity health education." The courses at Orcas Island were advertised as residential programs in a setting which respondent argues was similar to those of "summer camps, recreational lodges, health spas." This Court, however, held that, in contrast to Schoger,supra, petitioner "succeeded in demonstrating that its members devoted their time on Orcas Island and at the outreach centers to a structured program devoted to instruction in petitioner's concededly religious doctrines and that those aspects of the programs which can be characterized *367 as social or recreational were merely incidental to the programs' purpose. Here, we have no difficulty in accepting petitioner's religious purpose. We are, however, still left with the need to determine whether the social and recreational aspect of its activities was merely an incident to the religious activities and insubstantial in nature. We are unable to so find. As we have stated, the determination of the primary purpose of petitioner's activities is one of fact, as to which petitioner bears the burden of proof. Rule 217(c)(2). We are unable, under the facts set forth in the administrative record, to conclude that the substantial time devoted during petitioner's trips to secular sight-seeing activities, to beach-going and mountain climbing, was in furtherance of petitioner's primary purpose of providing Christian fellowship and teachings. The recreational aspect of each trip was so substantial in relation to any time available for religious instruction that we are not able to classify it as insubstantial in nature. Days spent on the Florida beaches, at Disney World and in Washington, D.C., sight-seeing, while undoubtedly pleasurable and educational by their very nature *368 represented time unavailable for petitioner's stated ministering purposes. [5] We are presented here with a factual situation akin to any trip for sight-seeing and recreational purposes where the group members are compatible in nature. The fact that the element of compatibility might be religious-oriented and therefore related to exempt activities cannot serve to provide a gloss of exemption over that which is recreational in nature. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The prerequisites for declaratory judgment have been met: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted all its administrative remedies, sec. 7428(b)(2); petitioner timely filed its petition with this Court, sec. 7428(b)(3).↩
3. Petitioner's other trip would be southerly, where a day would be spent on the beach in Florida, a day at Disney World and the last day traveling home.↩
4. Petitioner states, in regard to the bus ministry, that it provides "new and exciting experiences in the fellowship of a Christian atmosphere. Many non-Christians have the sadly mistaken notion that Christianity is for a bunch of fuddy-duddys, and the R.I.M. bus trips, whether to Florida/Disneyworld or Washington, D.C., give non-Christians (and fledgling Christians) the opportunity to see that such a belief is far from the truth. Young people share in a variety of fun experiences on a R.I.M. trip in addition to the spiritual times."↩
5. We arrive at this conclusion without accepting respondent's attempts at quantitatively arguing that petitioner's broad estimate of 20 percent of time spent in religious or devotional time must of necessity be "insubstantial." As we pointed out in Church in Boston v. Commissioner,71 T.C. 102, 108↩ (1978), "we do not set forth a percentage test which can be relied upon for future reference with respect to nonexempt activities of an organization. Each case must be decided upon its own unique facts or circumstances."