GONDIA CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gondia Corp. v. Commissioner
Docket No. 8713-77X.
United States Tax Court
T.C. Memo 1982-422; 1982 Tax Ct. Memo LEXIS 332; 44 T.C.M. (CCH) 590; T.C.M. (RIA) 82422; July 26, 1982. *332 Held: in this action for declaratory judgment under section 7428(a), I.R.C. 1954, the administrative record fails to establish that petitioner is organized or operated exclusively for one or more of the exempt purposes enumerated in section 501(c)(3) or section 170(c)(2)(B), I.R.C. 1954, (and not to promote its founder's ideas and writings for the benefit of its founder). Accordingly, respondent's determination that petitioner is not an organization described in section 501(c)(3) or section 170(c)(2), I.R.C. 1954, is sustained. Stephen E. M. Diamond (an officer), for the petitioner. Eugene H. Ciranni, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge:* *333 Petitioner instituted this action pursuant to section 7428[1] for a declaratory judgment that it qualifies as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) and that it qualifies as an organization described in section 170(c)(2). The issue for decision is whether petitioner is organized and operated exclusively for one or more of the exempt purposes enumerated in section 501(c)(3) or 170(c)(2)(B). This case was submitted for decision on the basis of the administrative record as filed by, and appropriately certified on behalf of, respondent under Rule 217(b)(1). [2] The administrative record as so filed and certified is incorporated herein by this reference; statements as to facts as represented therein are assumed to be true for purposes of this opinion. [3] The jurisdictional requirements for initiating this action have been satisfied. [4]
When the petition in this case was filed, petitioner, which *334 had been incorporated on October 3, 1974, under the General Nonprofit Corporation Law of California, had its principal place of business in San Francisco, California. Petitioner's articles of incorporation, and amendments thereto, set forth as follows the purposes for which it was formed: II. The purposes for which this corporation is formed are: a) The specific and primary purposes are to bring together all the possible human usage, speech, deqsterite, image music, movement and balance nutrition. b) The general purposes and powers are to dimensional project the 96 letter alphabet adeim, [5] and maintain the course necessary to record, store, assain, interpret instrumentale, portray and categorize using the format; storage library, introduction and corporate scale negotiation settlements, based on the tolerance of the human universe. AMENDMENTS TO ARTICLES OF ARTICLES FIRST AMENDMENT, ARTICLE II C. The normal purpose *335 of this organization shall be to engage activities directly related as; scientific, educational, religious and/or safe, or preventative for all persons concerned about those matters which are hereas proven, hazardous while serving the afore entered purpose. SECOND AMENDMENT, ARTICLE II D. The regular purpose of this organization shall hereto be the continued establishment of a biomedical research library, wherein entries such as those accrued during the maintenance and standardization of environmental quality are herewith preserved." Petitioner's by-laws provide as follows: The authorized number of members shall be 6,624 limit. There shall be 6,624 classes of membership. The qualifications of members of the Corporation shall be decided for services to be rendered. The property of members shall belong to them. The voting rights of members shall be attended to voluntarily. The other rights of members shall be recognized as perogative choices according to tradition. The privileges of members shall be 2 days off out of eight and 16 days vacation out of 368 days and $3.65 per hour for services rendered; 1,524 hours out of 8,832 hours. Their liabilities to dues shall be enacted *336 at time of union, with profit tax exempt status. Their liability to assessments shall be caution while handling and fine of cost shall be the method of collection realized with withholding procedures. AMENDMENT TO BYLAWS THE SONAMED DIRECTORS AND OR OFFICIALS OF GONDIA MAY BE THE PERSONS WHOM ARE SIGNATORS WHEREIN SUCH AUTHORITY IS FORMIDABLE. THE PERSONS WHOSE SIGNATURE WILL APPEAR FOR ANY TRANSACTIONS MAY ALSO EMPLOY A POWER TO ATTORNEY DURING INSTANCE OF CONVENIANCE WITH A STATEMENT OF AFFIRMATION TO SUCH AFFECT. THE exception being for the person or persons so named as officials whom actually need be present for any transactions. wherein the power of attorney is not valid and of no use and constitutes a veto/. Stephen E. M. Diamond (hereinafter sometimes referred to as "Diamond" [6]) is designated in petitioner's documents and pleadings variously as petitioner's president, chairman of the board, "qinrule", "originator", "FounDer", "owner", "Incorporate", "ruler", and "chief executive officer". The administrative *337 record includes correspondence between Diamond and others, dating from before petitioner's incorporation, as to the following: from the Library of Congress relating to Diamond's attempts to register or modify claims to copyrights; from the United States Department of Commerce Patent Office, the Canadian Consumer and Public Affairs Patent Branch, and others relating to Diamond's attempts to obtain patents; from QM Productions and others rejecting Diamond's scripts; from The Writers Guild of America West, Inc., providing information as to membership; from American Telephone and Telegraph Company, the Pacific Telephone and Telegraph Company, the United States Postal Service, Trans World Airlines, San Francisco Municipal Railway, Eastman Kodak Company, the Proctor & Gamble Company, Schwinn Bicycle Company, Carnation Company, and International Business Machines Corporation as to numbering systems and other proposals Diamond submitted for consideration; and from the Martha Baird Rockefeller Fund for Music, Inc., and others rejecting Diamond's requests for grants or awards. The administrative record includes correspondence dating from after petitioner's incorporation, of the same sort as *338 before. Some of this correspondence refers to petitioner and Diamond, and some only to Diamond. In July 1975, Diamond applied for a United States design patent on ADEIM FONT OF TYPE. Early the next month, Diamond presented to Eastman Kodak Company the idea of ADEIM, THE 96 LETTER ALFABET FOR MALES ET FEMALES WITH THE SAME SEAARATNES. Diamond and petitioner applied for a grant of Federal assistance to one or more Federal agencies in 1975, proposing the following projects: (1) The establishment of a township with a "recyclable circulating economy, [a] working productive factory prototype complete with a manufacturing and assemble schedule, along with a line of usable and saleable finished products." (2) "The development and research of self generating, element, perpetual electric motor, generator as source for utilities and transportation and industries." (3) "Development research and continuum of a total economy for men and women including administration, commerce and industry controlling interests. * * *" (4) "Development research and training with demonstration of calibrated ballistics distance and impact projection." (5) "To install ready for use the concept dimension of, sewage *339 perishable." "The subordinate objectives of the project are to localize convenient residential facilities, combination residential housing tracts for six member families with adjoining sewage isolation disposal storage acreage. Two acre sites with adjoining community fringe benefits, country club style living." An application that Diamond submitted on behalf of petitioner to the Energy Research and Development Administration on November 14, 1975, stated that petitioner "regularly employs 380 persons." The application estimated the total cost of its proposal as $1,451,244,180, and stated, "It [petitioner] has the necessary financial capacity, working capital, and other resources to perform the contract without assistance from any outside source." Of this total, $166,980,000 was to be "Fee or Profit". Diamond was to be the "principal investigator" for this project. Petitioner submitted an Application for Recognition of Exemption (Form 1023) dated April 10, 1974 (hereinafter sometimes referred to as "the first application"). Many of the questions on the first application are answered by "see the atached copies", yet there are no documents attached. Also, petitioner answered "YES" *340 to the question on the form (Part III, q. 9) "Does or will the organization limit its benefits, services or products to specific classes of individuals" and explained that recipients or beneficiaries are selected "[a]ccording to present profession, trade, skill, Business, talent and traditional choice interest." Petitioner answered "NO" to the question (Part III, q. 10) "Is the organization a membership organization?" Petitioner answered "No" to the question "Are benefits limited to members?" To the follow-up question "If 'No,' please explain", petitioner responded "Relatives, friends acquaintances of members and the private public and general public may by appointment only benefit." Respondent made a final adverse determination as to this application by letter dated May 9, 1975. Petitioner submitted another Application for Recognition of Exemption, dated "29 12 1975" (hereinafter sometimes referred to as "the second application"). Petitioner described its activities in the second application and attachments thereto as follows: (1) "[I]nvention and design development for medical research reasons, and implementations of engineering and architectural plans for medical development reasons, *341 also, the establishment of a coordinate library." (2) "[L]iterary operations (word surgery), healthy progressions and innovative advise and additions to the world we live in." (3) "Landmarking, (Demarking territories, BoundariEs, BordErs, etc.) Structural architecture, engineering varieties and economic modifications." In answer to the question (Part III, q. 8(a)) "What benefits, services, or products will the organization provide with respect to its exempt function?", petitioner stated "[a] library service, Medical research services and products. Quality environment products, as well as other housing services and products." An attachment to the second application (hereinafter referred to as "the attachment") states in part as follows: 8(a) The benefits the organization will provide with respect to it's Exempt function: Advised audited audial mental health, Literary mental health services and by appointment only. The services the organization will provide with respect to it's Exempt function: General public auddial and literary advise, Medical information to the medical profession, legal information to the LEgal profession and Scientific information to the Science profession. The *342 products the organization will provide with respect to it's Exempt function: adeim, hanadeim, Calender, Ruler, qasen (carrying case), suidje containers, nautical sail, yutilitE boat, jenuratos, labeling machine, triger firing mechanism, stored Electricity, clothing and auxiliaries, musical instruments, HElium navigational component unit, timing GEar, and possibly an oscillating magnetic engine. A sort of money (time wage vouchers), and a plan of education. Also, an EntertAinment Motion Picture. As to the question (Part III, q. 7 first partz) "What assets does the organization have that are used in the performance of its exempt function?", petitioner answered "[a]ssets such as related designs and inventions, plans for development, and company policy." On this subject, the attachment states: The assets the organization has that are used in the performance of it's Exempt function are: adeim (The complete and necessary 96 letter alfabet.) [7] *343 CeAju (the procedure of change which is applied to, and used to realize the Exempt purpose.) DEsigns, cost estimations, time estimations and speculative locations. MenEcha (the complete, inclusive measurement for with to measure.), and Model prototypes. Petitioner also indicated in the second application that one source of receipts would be earnings from "patients, copyrights or other assets". The attachment states the following as to this subject: SEPARATE source of REciepts *344 will BE from Patents; FONT OF TYPE DESIGN PATENT, TYPING INSTRUMENT DESIGN PATENT, CALENDER DESIGN PATENT, RULER DESIGN PATENT, SUIDJE CONTAINER DESIGN PATENT, NAUTICAL SAIL DESIGN PATENT, YUTILITY BOAT "YUTILE" DESIGN PATENT, ELeqTRIC GENERATOR "JENERATOS" DESIGN PATENT, ELeqTRICITY STORAGE PATENT, TRIGGER ASSEMBLY FIRING MECHANISM DESIGN PATENT AND POSSIBLY AN OSCILLATING MAGNETIC ENGINE, also apparel Design PATENT AND HOUSE DESIGN PATENT SEPARATE source of REciepts WILL BE from COPYWRIGHTS; Compositions, NARative fantasy, two one act plays (dramatico musical) and ScrEenplay. On the second application, petitioner answered "No" to the questions "Does or will the organization limit its benefits, services or products to specific classes of individuals" and "Is the organization a membership organization"; it provided no answer to the question "Are benefits limited to members". The attachment also states as follows: The cost of any approved products or service will be that of The Corporation' cost so long as Gondia Corporation remains non profit and tax exempt. Should a know stock be introduced the similar policy of cost to the consumer as cost to the corporation so long as the members *345 of the corporation are payed according for services rendered. As a known profit, (or regulated payment for services rendered), and or known stock becomes model, $6,624.00 will count as an approval to continue service and or product at cost and will allow $6,624.00 Tax deduction as charitable stock. Some of the samples. As to the second application, respondent determined that petitioner is not exempt as an organization described in section 501(c)(3) because petitioner is not organized and operated exclusively for one or more of the exempt purposes specified in section 501(c)(3) because it serves a private purpose, as follows: Your organization's primary purpose is to promote the inventions of [Diamond] by making them available to corporations and businesses operated for profit. The patents and copyrights are retained by the individual inventor. There are no benefits from this organization which accrue to the general public. The benefits are only to the individual inventor. Such a private benefit purpose is not within the intendment of section 501(c)(3). Contributions to your organization are not deductible under Code Section 170. Subsection (a) and (c)(3) of section 501[8] provide *346 that an organization may be exempt from income tax [9] *347 if (1) it is organized and operated exclusively for certain specified exempt purposes, (2) no part of its net earnings inures to the benefit of any private shareholder or individual, (3) no substantial part of its activities consists of lobbying activity, and (4) it does not participate in any political compaign on behalf of any candidate for public office. Petitioner contends that it-- is an exempt organization because; the activities which this company has concerned itself with over these formal four years of a philanthropic nature have continued to remain akin the code, I.R.S. 501(C3) to be exact; the development of a whole educational curriculum has been perfected for to administer such programs to all ages in order that corporate projects might better be fulfilled with graduated personnel. And that an order of membership has been created, also upheld so that a religion may be possible. And that an operative medical library has been begun for the continued health benefits which may be availed unto the persons whom constitute these inter organizational activities primarily. And that the research as well development of science oriented project programs about improved safety have been fourfold administered unto the respective authorities who also bear an exempt responsibility in matters of safety and prevention of cruelty to children and animals, in all this, coincidentally alike the antiquated I.R.S. code (501 C[3]). The organization continually welcomes the *348 public to financially partake in these "charitable activities also". 5A) The determination is erroneous. All of the petitioner's, Gondia Corporation, projects research projects, are primarily designed to serve a public benefit and that means private individuals also. 5A) Statement supporting fact. The budgets which were submitted and resubmitted along with the requests for determination by the petitioner, Gondia Corporation, were in fact inclusive of an extensive public for to receive benefit. And more clearly the research projects even before deadlines, were circulated to a number of public and private individual persons who may very well have benefited. 6. An appropriate prayer for relief in the name of, the petitioner, Gondia Corporation, it's Articles of Incorporation and it's amendments, and it's by laws. That the research projects be acknowledged, and be recognized as having been designed for to serve a public benefit, and albeit private benefit. We agree with respondent.
An organization is not organized and operated exclusively for one or more of the listed exempt purposes of it has a substantial purpose ( Better Business Bureau v. United States,326 U.S. 279, 283 (1945)) *349 of benefitting those who control it, even though exempt purposes also benefit. Old Dominion Box Company, Inc. v. United States,477 F.2d 340, 344 (CA4 1973); Stevens Bros. Foundation, Inc. v. Commissioner,39 T.C. 93, 110 (1962), affd. on this point 324 F.2d 633, 638-639 (CA8 1963). See Best Lock Corporation v. Commissioner,31 T.C. 1217, 1235-1237 (1959). The administrative record includes many items referring to Diamond's inventions and writings. This record fails to persuade us that petitioner has no substantial purpose to promote Diamond's inventions, or that Diamond has relinquished any patents or copyrights in the promoted inventions, or that Diamond would not benefit from petitioner's promotion of his inventions. The burden of proof is on petitioner as to the grounds set forth in respondent's notice of determination. Schoger Foundation v. Commissioner,76 T.C. 380, 386, 388 (1981); First Libertarian Church v. Commissioner,74 T.C. 396, 402 (1980); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977); Rule 217(c)(2)(i). Cf. Unitary Mission Church v. Commissioner,74 T.C. 507, 512 (1980), affd. without opin. 647 F.2d 163 (CA2 1981). Petitioner has failed *350 to meet its burden of proof. The parties do not argue separately as to section 170. The "organized and operated exclusively for exempt purposes" tests of section 501(c)(3) are repeated in haec verba (except for a reference to "testing for public safety") in subparagraph (B) of section 170(c)(2). See United States v. Olympic Radio and Television,349 U.S. 232, 236 (1955); McGahen v. Commissioner,76 T.C. 468, 482 (1981), on appeal (CA3 Aug. 24, 1981). Our above conclusion as to petitioner's failure of proof as to section 501(c)(3) leads us to conclude similarly as to the section 170 issue. We hold for respondent. Decision will be entered for the respondent.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge William M. Fay to Judge Herbert L. Chabot↩.
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the period relevant to this case.↩
2. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. See Assoc. for Alternative Schools v. Commissioner,71 T.C. 118, 119↩ (1978).
4. Petitioner is the organization whose qualification is at issue (sec. 7428(b)(1)), has exhausted its administrative remedies (sec. 7428(b)(2)), and filed its petition in this case before the 91st day after respondent mailed his final adverse determination as to petitioner's qualification (sec. 7428(b)(3)↩; see also Rule 210(c)).
5. In view of petitioner's purpose as to "the 96 letter alphabet adeim," the Court has not undertaken to determine which departures from standard orthography or capitalization in petitioner's documents are intentional and which (if any) are merely typographical errors.↩
6. Diamond is also referred to variously in documents in the administrative record as Stephen Diamond, Stephen Earl Diamond, Stephen Earl Michael Diamond, and Stephen Virgil.↩
7. Another page of the attachment states as follows: 6. Samles of literature: Gondia corporation has taken the pleasure to announce the completion of adeim the 96 letter alfabet, 48 adeim for women and 48 adeim for men, 12 vowels 24 consonants and 12 faloings each of which are instrumental for the reaching and the realization necessary. So much of todays' and tomorrows goals are geared for this concept of completely covering all the human possibilities with sound, type, image, and the extra medias such as music body movement and exactly balanced and proportioned diets according to the precise weight of the Etibles and drinkables, (al of which, i repeat, all of which must be accomplished), with the concept of true course. Along with both ordinal and cardinal numerics and an assigned meaning for Each human sound, this advantage place and time wise of men and women serving the same goal separately is the only valid cheque and balance system to incur. * * *
8. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. (c) List of Exempt Organizations.--The following organizations are referred to in subsection (a): (3) Corporations * * * organized and operated exclusively for religious, charitable, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * * ↩
9. The organization may nevertheless be subject to tax on its "unrelated business taxable income" (sec. 511 et seq.) and, if it is a private foundation, on its "net investment income" (sec. 4940↩). Neither of these issues appears to be in the instant case.