BALTIMORE REGIONAL JOINT BOARD HEALTH AND WELFARE FUND, AMALGAMATED CLOTHING '& TEXTILE WORKERS UNION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7001–77X.    Filed January 9, 1978.

*Jacob J. Edelman,* for the petitioner.
*James J. McGovern,* for the respondent.

## OPINION

DAWSON, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3).[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment[2] pursuant to section 7428. At issue is whether the petitioner served the private interests of its

---

[1]Unless specified otherwise, all section references are to the Internal Revenue Code of 1954, as amended.

[2]The prerequisites for this declaratory judgment have been satisfied: petitioner exhausted his administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

membership as opposed to the interests of the general public in contravention of the requirements for exempt status under section 501(c)(3).

This case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure.[3] The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. The pertinent facts are summarized below.

The Baltimore Regional Joint Board Health and Welfare Fund, Amalgamated Clothing & Textile Workers Union (petitioner) is a Maryland corporation with its principal office in Baltimore, Md. Petitioner is a health and welfare fund recognized as exempt from Federal income tax as a voluntary employees' beneficiary association under section 501(c)(9) of the Code. On September 7, 1966, respondent ruled that petitioner's health and welfare services to the children of its employees would have no adverse effect on petitioner's exempt status under section 501(c)(9).

On September 13, 1976, petitioner mailed respondent an Application for Recognition of Exemption (Form 1023) under section 501(c)(3). Such application was primarily predicated upon the desire that its child day care centers qualify for the food reimbursement program of the United States Department of Agriculture, which qualification requires section 501(c)(3) status.

Petitioner's activities are twofold: (1) It provides child day care centers and services for its union membership; and (2) it provides physical examinations and immunizations for its members.

Petitioner operates six child day care centers providing accommodations for 1,400 preschool children, ages 2 to 6. The centers are located in Baltimore, Md.; Chambersburg, Hanover, and McConnellsburg, Pa.; and Verona and Winchester, Va. They provide care for the children from Monday through Friday while their parents are working. Breakfast, lunch, and supplemental servings are prepared at each center in its own kitchen. Each center also has a health clinic with a nurse on duty and a pediatrician available when needed. A full early childhood

---

[3]See Rule 217(a), Tax Court Rules of Practice and Procedure, for submission on the administrative record of declaratory judgments not involving revocation.

education program is conducted at each center. Most of the centers also operate a licensed private kindergarten.

Through contract negotiations with the manager of the union's Baltimore regional joint board, the participating companies have agreed to pay 2 percent of their gross hourly payrolls into the health and welfare fund. This provides the major source of financial support for the centers. Investments made by the fund provide additional income. Hourly employees of the participating companies pay a tuition of $10 per week per child to use the centers. "Public" children, who have access to the centers on a "space available" basis, must pay a tuition fee ranging from $17.50 to $25 per child per week.

Petitioner uses approximately 76 percent of its total receipts or 78 percent of its total disbursements for the benefit of members to operate the centers.

Petitioner's members are provided with free physical examinations each year (each member choosing his own doctor) and a free ophthalmological examination biyearly. Free immunizations against flu are likewise available.

In his notice of determination dated April 5, 1977, respondent stated that his adverse ruling was based on the following reason:

> Since you pay substantial medical benefits to union members as the result of a collective bargaining agreement, you are not operated exclusively for charitable purposes described in section 501(c)(3) of the Code.

Sections 501(a) and 501(c)(3) provide[4] an exemption from Federal income tax for an organization devoted to charitable or educational purposes if three prerequisites are satisfied: (1) The

---

[4]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\*     \*     \*     \*     \*     \*     \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*     \*     \*     \*     \*     \*     \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

organization must be organized and operated exclusively for charitable or educational purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) it must not devote a substantial part of its activities to political or lobbying activity.

The burden of proof is on petitioner to overcome the ground for denial of the exemption set forth in respondent's notice of determination. Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. Moreover, the requirements for exemption under section 501(c)(3) are stated in the conjunctive; failure to satisfy any one of them will prevent exemption. *Stevens Bros. Foundation, Inc. v. Commissioner*, 39 T.C. 93, 110 (1962), affd. in part and revd. in part 324 F.2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964). To prevail in this case the petitioner must prove that respondent's determination is incorrect. It has failed to meet that burden.

In the context of the instant case, the most important requirement of section 501(c)(3) is that a qualifying organization must be operated exclusively for one or more charitable purposes. If the organization fails to meet the "operational test," it is not exempt. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. To meet the operational test the organization must be engaged in activities furthering "public" purposes rather than private interests. It is also necessary for such an organization to establish that it is neither organized nor operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled directly or indirectly by such private interests. Sec. 1.501(c)(3)–1(d)(1), Income Tax Regs. Application of the operational test is entwined with a proscription on private inurement. Section 1.501(c)(3)–1(c)(2), Income Tax Regs., provides that an organization is not operated exclusively for statutory purposes if its earnings inure to the benefit of private individuals.

Petitioner initially fails the operational test because it is not operated for charitable purposes. The administrative record shows that petitioner's activities consist of operating child day care centers and providing services for its union membership and, in addition, providing physical examinations and immunizations for its members. Moreover, with respect to the child day care services, eligible children of hourly employees are charged $10 tuition per week, whereas "public" children (those enrolled

on a "space available" basis) pay from $17.50 to $25 per week. These facts, and the entire administrative record, reflect that petitioner is operated as a health and welfare fund for the benefit of its membership. It is thus engaged in activities furthering the private interests of its membership as opposed to the interests of the general public. Although section 501(c)(9) organizations are traditionally operated to provide certain benefits to members, section 501(c)(3) organizations must serve the community as a whole rather than its members.

Even if petitioner's child day care centers were made equally available to all members of the community, as would be required of a section 501(c)(3) organization, petitioner would still not qualify for recognition of exemption under that section because its other activities show a private purpose, i.e., that of providing direct benefits to the organization's members. The administrative record reflects that petitioner pays substantial medical benefits (24 percent of its total receipts) to its members. An organization will not qualify under section 501(c)(3) if it has a single noncharitable purpose that is substantial in nature regardless of the number or importance of its charitable purposes. See and compare *Better Business Bureau of Washington, D.C. v. United States*, 326 U.S. 279, 283 (1945).

Accordingly, since petitioner failed to meet the requirements of section 501(c)(3), we hold that it did not qualify for tax-exempt status under that section.

*An appropriate decision will be entered.*