NATIONAL ASSOCIATION FOR THE LEGAL SUPPORT OF ALTERNATIVE SCHOOLS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6844–77X.    Filed November 6, 1978.

*Michael P. Gross*, for the petitioner.
*James J. McGovern*, for the respondent.

FAY, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(a)[1] as an organization described in section 501(c)(3). Petitioner challenges respondent's determination and has invoked the

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and in force during the years in issue.

jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] At issue is whether petitioner satisfies the operational requirements for exemption as an educational organization pursuant to the regulations under section 501(c)(3).

This case is submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. The joint stipulation as to the administrative record and the administrative record were filed by the parties pursuant to Rule 217 of this Court. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.[3] The pertinent facts are set forth below.

Petitioner is a nonprofit corporation organized under the laws of the State of New Mexico in June 1975. Its registered office is located in Santa Fe, N. Mex.

Petitioner was founded by Edward D. Nagel to promote better education for children through expanded private educational opportunities, and to provide the public information on alternatives to public education at little or no cost. The specific objectives and purposes of petitioner are set out in its bylaws as follows:

1. To research and compile a collection of legal actions from around the country involving the establishment, existence, or survival of alternative educational programs.

2. To establish and maintain a legal service, information and resource center.

3. To duplicate and distribute relevant legal documents to its membership.

4. To codify, analyze, and publicize significant legal actions affecting the establishment, existence or survival of alternative educational programs.

5. To publish a newsletter.

6. To develop areas and sources of funding for the Association and its areas of interest.

Petitioner's bylaws also state the requirements for membership in the association. Two classes of members are provided for: permanent and associate. All persons who have served at least 1 year as the director, principal, or other official of a tax-exempt,

---

[2]Sec. 7428, which provides for this judicial relief, sets forth the prerequisites for declaratory judgment. We are satisfied that they have been met: Petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

[3]See *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 489 (1977); Note, Rule 217(a), Tax Court Rules of Practice and Procedure (68 T.C. 1048 (1977)).

nonpublic educational organization are eligible to become permanent members of the association. All lawyers, administrators, teachers, or parents who have been involved with the establishment, existence, or survival of a tax-exempt public or nonpublic educational organization are eligible to become associate members. In addition, all members pay $20 per year in dues. As of March 31, 1976, petitioner had a total of 19 members from 12 different States.

Since its inception, petitioner has operated with very limited funds. For the period beginning July 1, 1975, and ending March 31, 1976, petitioner received only $310 in membership dues, $110 in contributions, and $10 in newsletter subscription fees. During this same period, petitioner's total expenditures were $274.21.

To carry out its stated objectives, petitioner has collected information on lawsuits across the country involving the organization and operation of alternative schools. Briefs filed in these actions as well as other articles and publications on alternative schools are available to both members and nonmembers for only the cost of reproduction.

In a few instances, petitioner has aided parents in their efforts to avoid sending their children to public schools without violating compulsory school attendance laws by suggesting different types of supervised home study as an alternative. Moreover, petitioner has provided individuals interested in starting an alternative school with necessary information on incorporating and obtaining accreditation.[4] Petitioner has also acted as a clearinghouse, putting interested parents in contact with accredited alternative schools.

In addition, Nagel wrote articles explaining petitioner's objectives and purposes which he submitted to organizations similar to petitioner for publication. Several of these organizations subsequently published some of the articles in newsletters which they mailed to their members.

Petitioner intends to publish a quarterly newsletter to keep subscribers abreast of developments concerning alternative education. Thus far, however, petitioner has published only one issue of its newsletter due to its lack of operating funds. This

---

[4]An alternative school, according to petitioner, is a private educational organization in which individualized attention, nontraditional curricula, and self-evaluation are emphasized. Importance is also placed on the emotional as well as the intellectual development of the students.

first issue contained an explanation of petitioner's objectives, information it can provide, and a request for contributions.

In order for an organization to be exempt from Federal income tax under section 501(a), section 501(c)(3) provides that three requirements must be met: (1) The organization must be organized and operated exclusively for one or more exempt purposes; (2) no part of its net earnings may inure to the benefit of any private shareholder or individual; and (3) it must not devote a substantial part of its activities to political or lobbying activity.[5]

Of these three requirements, only the first is in issue here because neither the second nor third requirement was raised by the respondent as a ground for its adverse ruling. While respondent does not dispute that petitioner has met the organizational test, in his notice of determination respondent determined petitioner failed the operational test. This test provides:

An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. [sec. 1.501(c)(3)–1(c)(1), Income Tax Regs.]

Specifically, respondent contends petitioner failed the operational test on two grounds: (1) Petitioner was operated for private rather than public interests, and (2) petitioner was not operated for an exempt purpose because it was not an educational organization within the meaning of the regulations.

---

[5]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\*        \*        \*        \*        \*        \*        \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*        \*        \*        \*        \*        \*        \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

The burden of proof is on the petitioner to overcome the grounds for denial of the exemption set forth in respondent's notice of determination. Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. Based on the entire administrative record, we believe petitioner has met this burden.

Section 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs., provides:

An organization is not organized or operated exclusively for [an exempt purpose] * * * unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization or persons controlled, directly or indirectly, by such private interests.

Relying on this regulation, respondent contends that because petitioner operates to provide specialized information and services to its members it is serving private rather than public interests. If petitioner provided information and services only to its members, we would be inclined to agree that private rather than public interests were being served. Cf. *Balt. Health and Welfare Fund v. Commissioner*, 69 T.C. 554 (1978).

However, the administrative record clearly shows that petitioner's information and services are available to the public as a whole and not just to members of the organization. The legal documents and other articles pertaining to alternative schools which petitioner has collected are available to nonmembers for the cost of reproduction only. In addition, subscriptions to petitioner's newsletter are available to any member of the public for a subscription price of $10 per year. Furthermore, petitioner will put all interested parents in contact with accredited alternative schools as well as provide advice on how they can establish supervised home study programs for their children.

As we stated in *Balt. Health and Welfare Fund v. Commissioner, supra* at 558, a section 501(c)(3) organization must serve the community as a whole and not just its members. Realizing that the education of our children is of vital interest to everyone, we believe that petitioner does serve the community as a whole by making available to all members of the public information on alternative methods of educating our children. *San Francisco Infant School v. Commissioner*, 69 T.C. 957 (1978). See also Rev.

Rul. 71–413, 1971–2 C.B. 229. Therefore, we conclude that petitioner is operated for public rather than private interests.

Respondent also contests petitioner's qualification as an exempt organization on the grounds that petitioner is not operated for an exempt purpose because it is not an educational organization within the meaning of the regulations.

Under section 1.501(c)(3)–1(d)(3)(i)(*b*), Income Tax Regs., the term "educational" includes "The instruction of the public on subjects useful to the individual and beneficial to the community." This same section also provides:

An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an organization is not educational if its principal function is the mere presentation of unsupported opinion.

On brief, respondent's position is that the petitioner, in its newsletter and in other publications of similar organizations, advocates the advantages of alternative schools over public schools without presenting a sufficiently full and fair exposition of pertinent facts as to permit an individual or the public to form an independent opinion or conclusion, and therefore, petitioner does not qualify as an "educational" organization.

While we agree the administrative record shows that petitioner encourages the public to consider alternative schools for their children, we disagree with respondent's contention that petitioner does not present a full and fair exposition of pertinent facts on the subject.[6] Considering the form and content of all the information petitioner makes available to the public, we do not believe its principal function is the mere presentation of unsupported opinion.

To begin with, petitioner makes available to the public copies of briefs and supporting documents filed in legal actions across the country involving the organization and operation of alternative schools. Providing the public with documents filed by

---

[6]We find equally unpersuasive respondent's argument that petitioner advocates disobedience of compulsory education laws, an illegal purpose, and, therefore, does not qualify as an exempt organization because under the law applicable to charitable trusts (and by analogy applicable here) all charitable organizations must demonstrate that their purposes are not illegal or contrary to public policy. While petitioner suggests alternatives to compulsory *public* school attendance, there is no evidence in the record to support respondent's contention that petitioner advocates disobedience of compulsory school attendance laws.

opposing parties in such disputes is in our opinion an appropriate method of presenting a full and fair exposition of the pertinent facts on this subject.

Moreover, petitioner encourages individuals with differing positions on alternative education to submit their viewpoints for publication in its newsletter. Use of such a format will provide the public the opportunity to consider opposing views and independently form their own opinion or conclusion on this subject.

In addition, by making information about accredited alternative schools available to parents who are concerned about the quality of the education their children are receiving in public schools, the petitioner is providing information on a subject "useful to the individual and beneficial to the community."

After careful consideration of the entire administrative record we conclude that petitioner operates as an "educational" organization within the meaning of the regulations.

Accordingly, we hold that petitioner qualifies for exemption under section 501(a) as an organization described in section 501(c)(3).

*An appropriate decision will be entered.*