POLICEMEN'S BENEVOLENT ASSOCIATION OF WESTCHESTER COUNTY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Policemen's Benevolent Asso. v. Commissioner
Docket No. 5602-80X.
United States Tax Court
T.C. Memo 1981-679; 1981 Tax Ct. Memo LEXIS 58; 42 T.C.M. (CCH) 1750; T.C.M. (RIA) 81679; November 25, 1981. Stephen A. Mishkin and Thomas R. Langan, for the petitioner. Karen M. Martino, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined petitioner does not qualify for exemption from Federal income tax as an organization described in section 501(c)(3). [1] Having exhausted its administrative remedies as required by section 7428(b)(2), petitioner has timely invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428(a). The issues are whether petitioner is operated exclusively for exempt purposes and whether part of petitioner's net *60 earnings inures to the benefit of private individuals. This case was submitted for decision on the stipulated administrative record under Rules 122 and 217. [2] The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding. [3]
Petitioner's principal place of business was Pleasantville, N.Y., when its petition herein was filed. Petitioner, Policemen's Benevolent Association of Westchester County, Inc., is a New York corporation organized in 1914. According to its Constitution and By-Laws, petitioner was established [t]o promote and develop a friendly and franternal spirit among all the policemen of Westchester County, New York and [t]o extend both moral and material aid and benefit to all deserving members. Petitioner's members represent 39 separate police departments in Westchester *61 County, New York. Persons eligible for membership in petitioner fall within three classes. [4] Class one consists of policemen who are members of any police department within Westchester County, New York, are less than 45 years old, are of good moral character and are in good health. Class two consists of persons identical in description to class one except that they are over 45 years old. Class three consists of policemen who are members of any "other police organization" in Westchester County, New York. Only members falling within class one are eligible for the retirement benefits described hereinafter. [5]
Petitioner receives its primary support from membership dues and from the general public through decal solicitations, identification card solicitations, raffles, and other activities. Petitioner also receives small amounts of interest *62 and dividends. Petitioner engages in the following activities: (1) holds monthly meetings to discuss legislative enactments and to exchange technical and professional ideas and information, (2) requires its members to attend members' funerals in full uniform, (3) provides grave markers and floral displays, (4) provides aid to members and widows of members in times of need, (5) provides scholarships to members' children, (6) pays death benefits to families of members, (7) provides free legal counsel to members in certain situations, and (8) pays a retirement benefit to certain members. The retirement benefit is paid to each member (class one) who has been an active member in good standing for at least 10 years. The benefit is $ 1,000 plus an additional $ 100 for each year after 10 years. However, the maximum benefit is $ 2,000. Retirement benefits are in no way based on an individual's need. On its 1977 Return of Organization Exempt from Income Tax, petitioner reported gross receipts of $ 104,120 and expenditures of $ 89,153. [6] Of the $ 89,153 expended, $ 18,910 was paid as benefits to members as follows: *63 Retirement benefits to 8 members
$ 8,225
Retirement benefits to 3 members' widows
3,000
Legal fees
1,000
Floral pieces
187
Other widows' benefits
1,120
Awards
75
Group life insurance
2,859
Socials
1,738
Returned dues
706
The rest of petitioner's 1977 expenditures was for operating costs. [7]
On its 1978 Return of Organization Exempt from Income Tax, petitioner reported $ 209,480 in gross receipts and $ 164,678 in expenditures. [8] Of the $ 164,678 expended, $ 44,834 was paid as benefits to members as follows: Retirement benefits to 27 members
$ 37,200
Legal fees
2,750
Floral pieces
229
Widows' benefits
2,505
Socials
2,500
Awards
150
Aside from $ 2,025 in charitable contributions, the rest of petitioner's 1978 expenditures was for operating costs. Petitioner was granted exemption from Federal income taxation on December 1, 1939. In a final determination letter dated January 23, 1980, respondent *64 revoked petitioner's exemption effective for taxable years beginning after December 31, 1977. That letter provides, in part, as follows: Your organization does not meet this requirement [exempt operation] for the following reasons: 1. More than an insubstantial part of your activities is not in furtherance of an exempt purpose. 2. Financial benefits inure to the members of the organization. 3. The organization has not been shown to serve a public rather than a private interest.
Section 501(a) exempts from Federal income tax organizations, among others, described in section 501(c)(3). [9] An organization will qualify under section 501(c)(3) only if (1) it is organized and operated exclusively for exempt purposes, (2) no part of its net earnings inures to the benefit of any private shareholder or individual, and (3) it devotes no substantial part of its activities to political or lobbying activity. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488, 491 (1977). *65 Respondent contends that petitioner's payment of retirement benefits to its members is a substantial part of petitioner's activities and serves a nonexempt purpose. Thus, respondent maintains petitioner is not operated exclusively for exempt purposes. See sec. 1.501(c)(3)-1(c), Income Tax Regs. Additionally, respondent contends petitioner's payment of retirement benefits constitutes prohibited inurement of petitioner's net earnings to private individuals. Petitioner contends that (1) its payment of retirement benefits serves a public purpose, (2) even if a private, rather than a public purpose, is served, payment of retirement benefits is an insubstantial part of petitioner's activities, and (3) petitioner's members are not "private individuals" within the meaning of the private inurement prohibition. We conclude petitioner's payment of retirement benefits to its members is a substantial activity of petitioner which serves a non-exempt purpose. Thus, petitioner is not operated exclusively for exempt purposes as required by section 501(c)(3). [10]
*66 To qualify for a section 501(c)(3) exemption from income tax, an organization must be operated exclusively for one or more exempt purposes. Section 501(c)(3) lists eight general exempt purposes--religious, charitable, scientific, testing for public safety, literary, educational, prevention of cruelty to children or animals, and fostering amateur sports competition. See also sec. 1.501(c)(3)-1(d)(1). The parties agree that the only possible exempt purposes served by petitioner's payment of retirement benefits is a charitable one. Even though a precise definition of "charitable" is not possible, one salient factor underlies a charitable prupose--the serving of a public rather than a private purpose. Balt. Health and Welfare Fund v. Commissioner, 69 T.C. 554 (1978); sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Accordingly, in determining whether petitioner's payment of retirement benefits to its members causes it to fail the section 501(c)(3) operational test, we must ascertain the purpose, public or private, those payments achieve. *67 [11]
Petitioner maintains that its retirement benefits program is designed to lessen the burdens of government and to increase police morale both of which benefit the public. We agree that some general public purposes are served, although they are to a large degree intangible. However, we are unable to find petitioner's primary purpose was to benefit the public. Rather, we find petitioner's dominant motivation was to pass economic benefit to its members--a distinctly private purpose. [12] No one other than petitioner's members, even other Westchester County policemen, are eligible for the retirement benefits. Moreover, payment of benefits is in no way based on need. [13] In effect, petitioner is operating a publicly-funded, non-qualified pension plan, and any intended benefit to the public is merely incidental. See Balt. Health and Welfare Fund v. Commissioner, supra at 558. *68 Petitioner contends even if its retirement program predominantly serves a private purpose, that program constitutes an insubstantial part of petitioner's activities. While an organization must be operated "exclusively" for exempt purposes in order to be tax exempt, that requirement has long been interpreted to permit insignificant or minor exceptions. Better Business Bureau v. United States, 326 U.S. 279 (1945); sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. However, we find that petitioner's payment of retirement benefits is neither insignificant nor minor. In fact, based on the record before us, we conclude that petitioner's retirement program forms a major part of petitioner's activities. [14]
In summary, petitioner's payment of retirement benefits is a substantial activity of petitioner which primarily serves a *69 private purpose. Thus, petitioner is not operated exclusively for exempt purposes and is not entitled to section 501(c)(3) exemption. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488, 489↩ (1977); Rule 217(b)(1).
4. The separation of members into "classes" is our characterization rather than petitioner's, but it is in accord with divisions in Article II of petitioner's Constitution and By-Laws. ↩
5. Under certain circumstances, a class three member may become eligible for retirement benefits if he resigns from the "other police organization."↩
6. The $ 104,120 in gross receipts consisted of $ 86,035 from the public, $ 14,715 from membership dues, $ 2,402 from interest, $ 649 from dividends, and $ 319 from stock sales.↩
7. Fund raising expenses are included in operating expenses.↩
8. The $ 209,480 in gross receipts consisted of $ 195,928 from the public, $ 8,927 from membership dues, $ 3,356 from interest, and $ 1,269 from dividends.↩
9. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. (c) List of Exempt Organizations.--The following organizations are referred to in subsection (a): (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for * * * charitable, scientific, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, * * * and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
10. Since failure to satisfy the operational test is itself a sufficient basis for denying petitioner sec. 501(c)(3) exempt status, we need not address the private inurement issue. However, we note that the prohibition of private inurement is entwined with the operational test. See Balt. Health and Welfare Fund v. Commissioner, 69 T.C. 554 (1978); sec. 1.501(c)(3)-1(c)(2), Income Tax Regs.↩
11. It is the purpose, not the nature, of activities which is determinative under the operational test. Ohio Teamsters Educational and Safety Training v. Commissioner, 77 T.C. 189↩ (1981), appeal filed (8th Cir., Oct. 29, 1981).
12. An activity may serve multiple purposes. In such situations, we must determine whether the dominant purpose was exempt or nonexempt. Ohio Teamsters Educational and Safety Training v. Commissioner, supra↩ n. 11. 13. Compare Sibley v. Commissioner, 16 B.T.A. 915 (1929), with Watson v. United States, 355 F.2d 269↩ (3d Cir. 1965).
14. Petitioner argues that the retirement program must be balanced against all petitioner's activities to determine whether it is substantial. We disagree. In order to be substantial, an activity need not be dominant.↩