SOCIETY OF COSTA RICA COLLECTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Society of Costa Rica Collectors v. Commissioner
Docket No. 8531-83X.
United States Tax Court
T.C. Memo 1984-648; 1984 Tax Ct. Memo LEXIS 28; 49 T.C.M. (CCH) 304; T.C.M. (RIA) 84648; December 13, 1984. Charles G. Trenckmann, for the petitioner, David A. Hampel and Mark L. Puryear, for the respondent. GUSSIS MEMORANDUM OPINION GUSSIS, Special Trial Judge: This is an action for declaratory judgment [1] under section 7428 of the Code. [2] It has been decided pursuant to assignment under the provisions of section 7456(d)(1) and Rule 218(a). Pursuant to Court Order this case was submitted on the basis of the administrative record filed September 28, 1983. The issue is whether petitioner qualifies for exemption from Federal income tax under section 501(c)(3). *30 The Society of Costa Rica Collectors (hereinafter referred to as petitioner or SOCORICO) was incorporated on December 5, 1978 pursuant to the provisions of the Texas Non-Profit Corporation Act. At the time the petition in this case was filed, SOCORICO's principal office was in Naples, Florida. Petitioner's Certificate of Incorporation states that the general purposes of SOCORICO are "educational and scientific" and the "[t]he primary and specific purposes are the study and promotion of the philately and related history of the Central American Republics with emphasis on the Republic of Costa Rica." Since its incorporation in 1978, SOCORICO has included some 200 members from both the United States and abroad. [3] Applicants for membership are required to be at least 18 years old and interested in promoting the purposes of SOCORICO and in participating in its various activities. The activities carried on by SOCORICO include: The quarterly publication of a magazine called The Oxcart which is published four times a year; publication of The Catalogue of the Stamps of Costa Rica (hereinafter the Catalogue) and The Index to Costa Rican Philatelic Literature (hereinafter the Index); *31 an expertization service for members for the authentication of the stamps of Costa Rica; a philatelic library; and, distribution of educational program materials to collectors clubs. The Oxcart serves as an informational newsletter and is distributed free of charge to SOCORICO's members and to its library. The Oxcart provides members with the opportunity to both buy and advertise for sale Costa Rican and Central American stamps. The Oxcart is not sold to the public. The operation of this intermember stamp exchange is as follows: When a member possesses excess stamps or postal histories, he sends them to SOCORICO's sales administrator who serves without compensation. The sales administrator decides to present the material either as single stamp items or as sets. The material is also given an estimated value by the sales administrator. All offerings of sale are then described and listed for bids in The Oxcart. Bids can only be made by other SOCORICO members entered by a date certain. [4] The sales administrator selects the highest bid and collects the *32 money from the buyer member. The sales administrator retains 10% for SOCORICO and the balance is sent to the seller. [5] sale offerings of stamps and postal histories by SOCORICO's members are not advertised publicly but only through The Oxcart. Individuals may join SOCORICO as regular, supporting, patron or life members. Dues vary depending on the type of membership. SOCORICO does not engage in membership solicitation. Seventy-five percent of annual dues is directed toward the publication and distribution of The Oxcart. All work performed by SOCORICO's members is voluntary. Officers and directors of SOCORICO serve without compensation, but they may be reimbursed for expenses incurred in attending regular or special Board meetings. SOCORICO usually meets once or twice a year for the conduct of official business and in connection with major philatelic exhibitions. In its application for exemption petitioner listed as its principal sources *33 of financial support the commissions made on the mail bid sales, membership dues, sales of its two other publications (the Catalogue and the Index) and interest from savings accounts. SOCORICO operates a philatelic library for the use of its members which provides specialized bibliographies on all phases of Costa Rica collecting. Although use of the library is free, members are required to pay for the cost of all photostatic copies of reference literature. Petitioner's financial status as of the end of 1979 was as follows: REVENUE: Gross dues and assessments of members
$1,930.80
Gross amounts derived from activities
related to organization's exempt purpose
(less cost of goods sold)
4,022.14
Interest, dividends, rents and royalties
607.23
Total Revenue
6,560.17
EXPENSES: Oxcart publication and distribution
$2,431.25
Expenses of officers, postage, phone
585.59
supplies, printing
Total Expenses
$3,016.84
Excess of revenue over expenses
$3,543.33 Petitioner's estimated financial status as of the end of 1980 was as follows: REVENUE: Gross dues and assessments of members
$2,200.00
Gross amounts derived from activities
related to organization's exempt purpose
(less cost of goods sold)
$2,445.00
Interest, dividends, rents and royalties
$1,370.00
Total Revenue
$6,015.00
EXPENSES: Oxcart publication and distribution
$3,100.00
Expenses of officers, postage, phone,
supplies and printing
655.00
Total expenses
$3,755.00
Excess of revenue over expenses
$2,260.00
*34 As of December 31, 1980 the assets and liabilities of SOCORICO were as follows: ASSETS: Cash: interest bearing accounts
$15,375.36
Other
250.00
Inventories
2,950.00
Depreciable assets
65.70
Total assets
$18,641.06
LIABILITIES:
none
Total net worth
$18,641.06 On March 30, 1980, petitioner filed Form 1023, Application for Recognition of Exemption, with the Internal Revenue Service in Austin, Texas. On January 19, 1983, respondent issued its final adverse ruling letter which denied petitioner tax exempt status. This determination was based on the grounds that petitioner was not organized or operated exclusively for exempt purposes pursuant to section 501(c)(3); that a substantial part of petitioner's activities are commercial in nature and therefore not in furtherance of an exempt purpose; that petitioner does not operate for a public purpose; and, that its net earnings inure to the benefit of SOCORICO's members. The burden of proof is on petitioner to overcome the grounds enumerated in respondent's notice of determination. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977); *35 Rule 217(c)(2)(i). This Court's determination is based on the facts contained in the administrative record and any inferences that may fairly be drawn therefrom. Dumaine Farms v. Commissioner,73 T.C. 650, 664-665 (1980). We find that petitioner has failed to meet its burden. An organization may qualify for exemption from income taxation under section 501(c)(3) only it it is organized and operated exclusively for one or more of the exempt purposes specified in section 501(c)(3). Section 1.501(c)(3)-1(a)(1), Cincome Tax Regs. To meet this two-part test, petitioner must show (1) that its "articles of organization" limit it to one or more exempt purposes and (2) petitioner must not engage, except in insubstantial part, in activities which do not further an exempt purpose, i.e. an "organizational" test and an "operational" test. Section 1.501(c)(3)-1(b) and 1(c), Income Tax Regs. The presence of a single nonexempt purpose, if substantial in nature, will destroy the exemption regardless of the number of truly exempt purposes. Better Business Bureau v. United States,326 U.S. 279 (1945); *36 Copyright Clearance Center v. Commissioner,79 T.C. 793 (1982). We find that petitioner fails the operational test of section 501(c)(3). [6]
*37 Here, the record establishes that publication and distribution of The Oxcart was a substantial activity engaged in by petitioner and that a substantial portion of Tex Oxcart was utilized to carry on a mail bid sales service operation for its members. Buyers and sellers of stamps were brought together and sales were made through the offices of SOCORICO's sales administrator who decided on the appropriate marketing format, provided estimates, made sales to the highest bidder and, after retaining a commission, remitted the balance of the sales proceeds to the seller. The procedures followed in these transactions are indistinguishable from commercial public sales, with the exception that SOCORICO's sales commission was 10 percent instead of the usual 20 percent. Only members could obtain expertization service for the authentication of stamps and educational programs provided by SOCORICO were only available to its members. This substantial mail bid sales activity clearly served a private and hence nonexempt purpose. See Baltimore Health and Welfare Fund v. Commissioner,69 T.C. 554 (1978); see also section 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. *38 The educational activities of petitioner are minimal in nature and are simply incidental to the philatelic sales service operations conducted by SOCORICO. Petitioner's other publications the Index and the Catalogue, deal with stamps of Costa Rica and philatelic literature of Costa Rica. Initially, the Catalogue was distributed free to petitioner's members. A second edition of the Catalogue is available to both members and nonmembers for a fee. Even if the purpose of such activities qualifies as educational within the meaning of the statute, the presence of the substantial nonexempt activity of mail bid sales negates petitioner's claimed exemption under section 501(c)(3). On this record, we must affirm the determination of the respondent that petitioner is not exempt from taxation under the provisions of section 501(c)(3). Decision will be entered for the respondent.
Footnotes
1. The statutory prerequisites for declaratory judgment have been satisfied: Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted all its administrative remedies, sec. 7428(b)(2); petitioner timely filed its petition with this Court, sec. 7428(b)(3)↩. 2. All statutory references are to the Interal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In its application for exemption, petitioner listed seven individuals who headed SOCORICO's governing body.↩
4. According to the December 1979 issue of The Oxcart, some 35% SOCORICO's members have participated in the mail bid sales. ↩
5. The proceeds of one such mail bid sale totaled about $9,700, 10% of which was retained by SOCORICO.↩
6. In Syrang Aero Club, Inc. v. Commissioner,73 T.C. 717, 720-721 (1980) we explained the operational test as follows: The operational test requires an organization's activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. Included among the exempt purposes are "educational" and "charitable" purposes. Sec. 1-501(c)(3)-1(d)(1)(i)(b) and (f), Income Tax Regs. * * * An organization is not organized and operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. See Baltimore Health and Welfare Fund v. Commissioner,69 T.C. 554 (1978); Callaway Family Association v. Commissioner,71 T.C. 340↩ (1978).