T.C. Memo. 2005-30

UNITED STATES TAX COURT

AMEND16ROBERTWIRENGARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18437-03X.              Filed February 22, 2005.

R.O. Wirengard (an officer), for petitioner.

<u>Helen F. Rogers</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  In a final adverse determination letter, respondent determined that petitioner did not qualify for exemption from Federal income taxation pursuant to section 501(a) as an organization described in section 501(c)(3).[1]  Having

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references
(continued...)

exhausted its administrative remedies, petitioner challenged respondent's determination by timely filing a petition for a declaratory judgment pursuant to section 7428(a). The administrative record was submitted to the Court by joint motion pursuant to Rules 122 and 217(b). For purposes of the instant proceeding, the facts and representations contained in the administrative record are accepted as true and are incorporated herein by reference. The sole issue to be decided is whether petitioner qualifies for tax exemption as an organization described in section 501(c)(3).

## Background

On or about August 16, 2001, petitioner filed a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (Form 1023). In its Form 1023, petitioner reported that it was organized as an association and that it had an address in Hillsborough County, Florida.

In the Form 1023, petitioner reported that it was a school. Petitioner's Web site described petitioner as a "free school" whereby education is provided via the Internet on how to obtain a microloan; how to establish an IRA; how to obtain health care; and how to "think about reality or other religions". An article on petitioner's Web site entitled "Article of an Unincorporated,

---

[1](...continued)
are to the Tax Court Rules of Practice and Procedure.

Non-Profit Individual Organization" stated that the purpose of the organization is "to educate as many people as possible about the existing Amendment 16 of the Constitution of the United States of America, its fundamental flaws that are contrary to the views of our founding fathers and ways to correct these."

Along with its Form 1023, petitioner submitted articles of association[2] (hereinafter referred to as the Articles).  The Articles provided:

ARTICLE III
PURPOSES

Amend16robertwirengard is not for profit and organized exclusively for educational, welfare and charitable purposes, including to:

1.  Provide education and advocacy, principally of the economic and financial sciences
2.  Provide for food, shelter, healthcare, access/transportation and environments
3.  Study, research and test welfare, healthcare and environmental models
4.  Identify socio-economic and sustainability problems and provide economic solutions
5.  Assist and organize employees and unemployed and unpaid workers for their and children's welfare

---

[2]The record shows that petitioner submitted to respondent drafts of its articles of association on three separate occasions.  Each of the three drafts was dated Aug. 31, 2001.  The first draft was signed only by Robert Wirengard and submitted as an attachment to petitioner's Form 1023.  The second draft, set forth above, was identical to the first, except that it was signed by all four directors and was submitted by petitioner as an attachment to a letter to respondent dated Oct. 9, 2001.  The third draft was not identical to the first two drafts but was substantially similar; it was signed by Robert Wirengard and Mauricio Rosas and submitted by petitioner as an attachment to a letter to respondent dated Apr. 3, 2003.  The signature of Mauricio Rosas was dated Apr. 3, 2003.

6.   Study, assist and organize economic welfare arrangements and alliances for and/or with other community concerns, including employee, employer, government, faith based, corporate, other business and environmental entities
7.   Publish economic mechanisms and applications based on Nobel Laureate types of economic and financial theories; as well, publish test conclusions of models built, be they successful or failures (and how they may be amended or corrected to build a sustainable universe)

*    *    *    *    *    *    *

## ARTICLE VI
## BY-LAWS

Provisions for the regulations of the internal affairs of Amend16robertwirengard are to be determined and set forth in the By-Laws.  The Board of Amend16robertwirengard shall adopt the original By-Laws.  Thereafter, By-Laws may be adopted, amended or repealed by the Board of Directors in accordance with the By-Laws.  Any decision before the board must be concluded with unanimous vote, in favor or against.

*    *    *    *    *    *    *

## ARTICLE VIII
## OVERSEERS

The number of Directors of Amend16robertwirengard shall be three, or more than three, as fixed from time to time by the By-Laws of Amend16robertwirengard.  The number of Directors constituting the initial Board of Directors is four, and the names and addresses of the persons who are to serve as directors or overseers until their successors are elected or otherwise appointed and shall qualify are:

Robert Wirengard
6234 Falkenburg Road North
Fair Share, FL 33610-9491

(Note, "Fair Share" is not within Tampa city limits, is in an unincorporated area of Hillsborough County, and

our post office, approving the name so long as the correct zip code is used, delivers to our Fair Share address).

Mauricio Rosas
P.O. Box 7641
Tampa, FL 33673

John Larsen
532 De Resine Carre
Seffner, FL 33532

Tom Hoyt
611 De Resine Carre
Seffner, FL 33584

       *    *    *    *    *    *    *

IN WITNESS WHEREOF, I have executed these Articles of Amend16robertwirengard in duplicate this 31st day of August 2001, and say that I know the contents thereof and am liable for the entity, both economically and financially, and to the letter and in the spirit of governing laws.

(Signed ROWirengard)

Robert Wirengard, <u>FOUNDER, PRINCIPAL AND AGENT</u>

Mauricio Rosas, Board of Directors

(Signed Mauricio Rosas)

Thomas Hoyt, Board of Directors

(Signed Thomas Hoyt)

John Larsen, Board of Directors

(Signed John Larsen)

Petitioner subsequently submitted to respondent a document entitled "Agreement to Amend" (hereinafter referred to as the Agreement) in which petitioner agreed to "enact" the following amendment to the Articles:

a.   The organization is organized exclusively for charitable, religious, educational, and/or scientific purposes under section 501(c)(3) of the Internal Revenue Code.

b.   No part of the net earnings of the organization shall inure to the benefit of, or be distributable to, its members, trustees, officers or other private persons, except that the organization shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in the purpose clause hereof.  No substantial part of the activities of the organization shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the organization shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office.  Notwithstanding any other provision of this document, the organization shall not carry on any other activities not permitted to be carried on (a) by an organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, or corresponding section of any future federal tax code, or (b) by an organization, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or corresponding section of any future federal tax code.

c.   The organization will not discriminate based on gender, race, religion, disability, or ethnic or national origin.

The Agreement stated that the amendment would be adopted in accordance with petitioner's internal rules of operation.  Robert Wirengard alone signed the Agreement; the Agreement was not signed by all directors as required by Article VI of the Articles.

As an attachment to a letter dated June 20, 2002, petitioner submitted to respondent a document entitled "By-Laws of Amend16robertwirengard (Under Review)" (hereinafter referred to as the Bylaws).  The Bylaws provided:

Article I: <u>Name</u>

<u>Sec. 1.</u>  The name of this organization shall be Amend16robertwirengard, with its divisions and wholeness through the <u>Circle of Life Ministry</u>, <u>United Health Payers</u>, <u>United Arrangements</u>, <u>United Affiliations and</u>, <u>United Bank</u>, <u>severally and jointly</u> Of Amend16robertwirengard We are an integral part of our local community, Hillsborough County, Florida, and the United States of America and our greater community, all territories, nations, our Earth and our Universe.

Article II: <u>Purpose and Policy</u>

<u>Sec. 1. Purpose.</u>  To teach about, apply and treat each as each would be treated.

*   *   *   *   *   *   *

Article IX: <u>Programs/Divisions</u>

<u>Sec. 1. Authorization.</u>  The Principles of "treating each as each would be" and freedom to choose, without dictate, threat or coercion, adopted by us as a whole, constitute the authorization for the adoption of Programs.
<u>Sec. 2. Programs.</u> The programs shall consist of those issues chosen for concerted study and action.
<u>Sec. 3. Current Agenda and Continuing Responsibilities.</u> These categories of programs are defined as follows:
a. The Current Agenda focuses on universal, market priced healthcare, the absence of which in the United States, involves a million people in medical mishaps, including losses of lives, and a half million personal bankruptcies (impoverishments) annually, involving healthcare debts.  The healthcare issue is eminent as a national issue and in local governmental issues limited to indigent care through a general sales tax.
b. The Continuing Responsibilities shall consist of working with local government staff in its objective to co-pilot universal, market priced healthcare, currently

having established a Health Insurance Study Work Group relative to this.
c. The long term agenda, of which healthcare represent close to a third, is the elimination of poverty and war, or, put positively, having world wide peace (unfair activity, violence and terrorism being preempted by treating each as each would be:  that each should have needs met and work and trade freely for more than what the needs of sustenance are).

Article I, section 1, of the Bylaws provides that petitioner is organized into five divisions: (1) Circle of Life Ministry; (2) United Health Payers; (3) United Arrangements; (4) United Affiliations; and (5) United Bank.  Petitioner's Web site provided the following description of the five divisions:

For welfare purposes and what may be described as scientific and experimental models, practical applications and/or assistance programs, divisions of Amend16robertwirengard exist.  These, similar to colleges within a university, are:

United Arrangements of Amend16robertwirengard - educational, practical and real welfare application purposes and assuring compliance with the Multi Employer Welfare Arrangement of the Employee Retirement Income Security Act, passed by the U.S. Congress and under the U.S. Department of Labor.  This school may remain in perpetuity until the end of poverty and systematic impoverishment.

United Health Payers of Amend16robertwirengard (Mary Lasano, nurse and consultant) - experimental model for market-priced, universal healthcare in a non-socialist society.  Once the success that is envisioned is accomplished, it is expected that this one-payer system will be bought out at future cost to become an efficient one-payer system established as a Government Sponsored Entity (much as the U.S. Federal Reserve system currently is a GSE).

United Bank of Amend16robertwirengard (DeVara Sims, Tampa Police Dept./reach out, consultant and trustee) - a non-profit banking facility for people and businesses

to learn about and apply banking products and services; establish IRA's, pooling of funds, also for other financial services such as electronic payroll depositing for small firms, including, possibly, for our no-profit United Health Payers deposits, accruals, and disbursements, or employees being able to pull partial cash funds from payrolls of their employers for a day's work, as well as store year to date information on wages, tax withholdings and benefit costs; micro loans to persons and small businesses, mainly for work or volunteer initiatives.  $8,000 already has been donated for this endeavor.

Circle of Life Ministry of Amend16robertwirengard (Merry Wiesenborn, director, volunteer, trustee) - provides food and shelter for needy; transportation; financial assistance for single mothers, particularly those who have experienced violent, physical abuse [cash assistance for food, shelter and education plus transportation needs, exceeds $5,000, plus $12,000 in loaner vehicle assets are tied up]; potential center specifically for working with youth involving hate crime; religious* studies, discussions and advocacy as regards religions of Wiesenborn's Circle of Life Ministry and realism as opposed to or inclusive of faiths in a deity or deities (possibly of the more modern government preferred religions, such as of Judeo-Christianity or Islam, etc.)  Its doctrines are based on the natural earth and universe, spirit of people, "big boom" theory, treating others as one wants to be treated, amending where we are wrong, repairing where we have hurt, and civil and consensual activities as opposed to systematic corruption that can stem from the concentration of power in governments or from individual violent abuses (often the physical power of a man over a woman, rather than logic and reasonability; or the difficult challenge of teaching children without expeditiously inflicting pain that causes long term and deep problems).

*     *     *     *     *     *     *

<u>United Alliances of Amend16robertwirengard[3] (Mauricio Rosas, independent citizen, activist, and trustee)</u> - advocacy and reach out program to join in common grounds with other businesses, government, schools and universities, community concerned (including those concerned with global healthcare, environmental issues and community sustainability, from local "Tomorrow Matters", League of Women Voters, Independent Citizens, ACLU, Results!, Amnesty International, Planned Parenthood to the Federal Reserve Bank of the U.S and other central banks, United Nations, International Monetary Fund and World Bank), and faith based organizations.

In a letter to respondent dated November 30, 2001, petitioner described the organization as a university "based on theory", whereas the five divisions are "subordinate colleges, arranged to complete the fundamentals of a ‹micro-society' (a ‹laboratory' and teaching facility)".   The letter described the separate functions of the divisions as follows:

United Bank * * * deals with monetary aspects in our "mirco-society" and is about how to go about setting up, providing and receiving microloans, individuals learning and doing so (some $8,000 in cash and loan receivables having been donated by Robert Wirengard to United Bank and one microloan having been established with arm's distance controls - authorization by the director); United Arrangements, is the legal avenue, as a Multi Employer Welfare Arrangement under ERISA, allowing us to work independently of regulations that regulate private sector welfare agents such as healthcare insurance firms (for example, as a MEWA, we are not required to be licensed insurance representatives nor to have cash reserves committed for coverage) it allows us, people, as individuals and private sector firms, for example, to work together to arrange for "affordable" health care, something

---

[3]United Alliances of Amend16robertwirengard is presumably the same division designated in the Bylaws as United Affiliations.

considered to be a welfare arrangement for employees and their family, our community; United Affiliations, is the legal channel that will allow our actual "reach-out" to involve all community members - from both private and government sectors, as well as all ranges of persons or associations within each - and for us to work together as individuals or groups for common goals, for example, or for affordable healthcare (a learning and application process, to the benefit of everyone); and Circle of Life Ministry, about getting food, shelter and healthcare for each other (again to the community's welfare, and while dealing with the common notions of conscience or faith based charity).

The letter distinguished petitioner from founder and board member Robert Wirengard, who "petitioned and lobbied" Federal and State Government officials and, in December of 2000, presented a healthcare model to the Health Care Advisory Board of Hillsborough County.[4]

In a letter dated October 20, 2003, respondent issued a final adverse ruling with respect to petitioner's claim for exemption. Respondent based the ruling on his determination that petitioner failed to establish that: (1) Petitioner was organized exclusively for exempt purposes; (2) petitioner was operated exclusively for exempt purposes; (3) petitioner's net earnings will not inure to the benefit of private individuals or serve private interests; and (4) petitioner was not an "action" organization within the meaning of section 1.501(c)(3)-1(c)(3), Income Tax Regs.

---

[4]Robert Wirengard proposed that government pay the costs of healthcare services for individuals to the extent of the average costs for such services.

Discussion

Section 501(a) exempts from Federal taxation organizations described in section 501(c)(3).[5]  To qualify as an organization described in section 501(c)(3), an organization must satisfy each of the following four requirements:  (1) It must be organized and operated exclusively for certain specified exempt purposes; (2) no part of its net earnings may inure to the benefit of a private shareholder or individual; (3) no part of its activities may constitute intervention or participation in any political campaign on behalf of any candidate for public office; and (4) no substantial part of its activities may consist of political or lobbying activities.[6]  See sec. 501(c)(3); Fla. Hosp. Trust Fund

---

[5]SEC. 501(a).  Exemption from Taxation.--An organization described in subsection (c) * * * shall be exempt from taxation * * *.

[6]SEC. 501(c).  List of Exempt Organizations.--The following organizations are referred to in subsection (a):

   *    *    *    *    *    *    *

   (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or
                                        (continued...)

v. Commissioner, 103 T.C. 140, 145 (1994), affd. 71 F.3d 808 (11th Cir. 1996); Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1062 (1989); IHC Health Plans, Inc. v. Commissioner, T.C. Memo. 2001-246, affd. 325 F.3d 1188 (10th Cir. 2003). Section 501(c)(3) provides for the following exempt purposes: Religious, charitable, scientific, testing for public safety, literary, educational, and prevention of cruelty to children or animals. Sec. 1.501(c)(3)-1(d)(1)(i), Income Tax Regs.

It is well established that our inquiry focuses on the reasons given by the Commissioner for denying an organization's application for exemption. See Aid to Artisans, Inc. v. Commissioner, 71 T.C. 202, 208 (1978). Thus, in making our declaration, we do not engage in a de novo review of the administrative record. See Am. Campaign Acad. v. Commissioner, supra at 1063; Church in Boston v. Commissioner, 71 T.C. 102, 105-106 (1978); Houston Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. 570, 573-574, 577 (1978).

The first of the section 501(c)(3) requirements mandates that an organization be organized exclusively for one or more of the exempt purposes. The exempt purposes requirement is met only if the organization satisfies the organizational as well as the

---

⁶(...continued)
intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

operational test.  See sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.
The organizational test is set forth in section 1.501(c)(3)-1(b)(1)(i):

> (i) An organization is organized exclusively for one or more exempt purposes only if its articles of organization * * * as defined in subparagraph (2) of this paragraph:
>
> > (a) Limit the purposes of such organization to one or more exempt purposes; and
> >
> > (b) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.[1]

[1]The term "articles of organization" includes an organization's articles of association.  Sec. 1.501(c)(3)-1(b)(2), Income Tax Regs.

Furthermore, to satisfy the organizational test, an organization must serve a public rather than a private interest.  See sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs; Columbia Park & Recreation Association, Inc. v. Commissioner, 88 T.C. 1, 13 (1987), affd. without published opinion 838 F.2d 465 (4th Cir. 1988); Retired Teachers Legal Fund, Inc. v. Commissioner, 78 T.C. 280, 286 (1982); Baltimore Regl. Joint Bd. Health & Welfare Fund v. Commissioner, 69 T.C. 554 (1978).

Even if an organization's articles of organization set forth purposes no broader than those specified in section 501(c)(3), the organization is not organized exclusively for exempt purposes if such articles expressly empower it to carry on (other than as

an insubstantial part of its activities) activities not in furtherance of one or more exempt purposes. Sec. 1.501(c)(3)-1(b)(1)(iii), Income Tax Regs.

In the instant case, the enumerated activities set forth in Article III of the Articles are broad in scope and vague in description.[7] For instance, the Articles empower petitioner to provide economic solutions to identified socioeconomic problems. Such activities do not necessarily further an educational or charitable purpose regardless of the fact that the Articles state that petitioner is organized "exclusively for educational, welfare and charitable purposes." See id. This Court has held, however, that the mere existence of power to engage in activities other than those set out in section 501(c)(3) does not in itself prevent an organization from meeting the organizational test. Peoples Translation Serv./Newsfront Intl. v. Commissioner, 72 T.C. 42, 48 (1979). A determination of whether an organization is organized exclusively for exempt purposes is based on an examination not only of the articles of organization but also of other evidence in the administrative record. See Peoples Translation Ser./Newsfront Intl. v. Commissioner, supra; Gen.

---

[7]The enumerated activities include providing "education and advocacy, principally, of the economic and financial sciences"; providing healthcare and transportation; testing "welfare, healthcare and environmental models"; providing economic solutions to identified "socio-economic and sustainability" problems; assisting and organizing employees; and organizing economic welfare arrangements.

Conference of the Free Church of Am. v. Commissioner, 71 T.C. 920, 927 (1979); Levy Family Tribe Found., Inc. v. Commissioner, 69 T.C. 615, 619 (1978). Consequently, an examination of the administrative record in the instant case for evidence that the enumerated activities of the Articles will further an exempt purpose is appropriate.

We understand petitioner's contention to be that it is a school organized to disseminate theory to the public at-large via petitioner's Web site and to engage in the practical application of such theory through its five divisions. Petitioner includes banking activities among such practical applications.

As noted above, the Articles expressly empower petitioner to identify socioeconomic problems and provide economic solutions. Article I of the Bylaws establishes United Bank as one of petitioner's five organizational divisions but does not further describe the organization or operations of United Bank. Petitioner's Web site stated that United Bank of Amend16robertwirengard would provide banking products and services to individuals and businesses. According to the Web site, such services include establishing IRAs, pooling funds, electronic payroll deposits for small firms and possibly for United Health Payers, accruals, disbursements, and providing micro loans. In its letter of June 20, 2002, petitioner stated that United Bank is primarily distinguished from commercial banks

in that United Bank is neither incorporated nor a member of the FDIC.  Rather, Robert Wirengard assumes all liability related to United Bank.  Petitioner stated that loans were to be "of micro-level (small) nature to help 'small' people economically to get on their feet".  Petitioner provided respondent with a sample microloan note, which imposed a 6-percent interest charge. According to petitioner, as of June 20, 2002, United Bank had made a single loan, which resulted in default.

Respondent contends that United Bank does not further any exempt purpose.  Petitioner contends that United Bank would help the poor by extending microloans and contends generally that petitioner lacks a profit motive.

Based upon our review of the record, we conclude that, through United Bank of Amend16robertwirengard, petitioner is empowered to engage in activities not in furtherance of an exempt purpose.  The record reveals that United Bank would carry on the activities of a commercial bank, such as extending personal and commercial loans for a stated interest.  Petitioner's stated purpose of extending loans to low-income individuals and small businesses, petitioner's lack of profit-motive, and United Bank's lack of FDIC insurance do not establish that the commercial banking activities of United Bank would further an exempt purpose.  The activities of United Bank would constitute a substantial part of the activities of Amend16robertwirengard.

Based on the foregoing, petitioner does not satisfy the organizational test of section 1.501(c)(3)-1(b)(1)(i), Income Tax Regs., and is not organized exclusively for one or more exempt purposes as required by section 501(c)(3). Consequently, petitioner is not entitled to the declaratory judgment it seeks. We need not address respondent's contentions that petitioner was not operated exclusively for exempt purposes, that petitioner's net earnings will inure to the benefit of private individuals or serve private interests, and that petitioner is an action organization within the meaning of section 1.501(c)(3)-1(c)(3), Income Tax Regs.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.